# Exhibit A

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.    2018-039581-CA(08)

PRISCILA ELEN DE SOUZA LIMA, as
Personal Representative of the Estate of
AILTON CESAR JUNIOR ALVES DA SILVA,
deceased,

BÁRBARA CALAZANS MONTEIRO, as
Personal Representative of the Estate of
ANANIAS ALOI CASTRO MONTEIRO,
deceased,

GIRLENE CAMPINHO AZEVEDO
DOMINGUES, as Personal Representative of
the Estate of BRUNO RANGEL DOMINGUES,
deceased,

ARIADINY PATRICYA WEBER, as Personal
Representative of the Estate of EMERSON FABIO
DIDOMENICO, deceased,

PATRÍCIA LUANA GROZA DA SILVA
GIMENEZ, as Personal Representative of the Estate
of GUILHERME GIMENEZ DE SOUZA,
deceased,

VALDÉCIA BORGES DE MORAIS PAIVA, as
Personal Representative of the Estate of
JOSE GILDEIXON CLEMENTE DE PAIVA,
deceased,

AQUINOAN DE SOUSA CARVALHO, as
Personal Representative of the Estate of
LUCAS GOMES DA SILVA,
deceased,

HÉLIO HERMITO ZAMPIER NETO,

ULRIKE OHLWEILER, as Personal Representative of
the Estate of ANDERSON RODRIGUES PAIXAO
DE ARAUJO, deceased,

DAIELLI FAUSTINO KEMITC DA SILVA, as
Personal Representative of the Estate of
MATHEUS BITENCOURT DA SILVA, deceased,

GRAZIELE DE AQUINO ALVES VIEIRA, as
Personal Representative of the Estate of TIAGO
DA ROCHA VIEIRA ALVES, deceased,

JAKSON RAGNAR FOLLMANN,

SUELLEN NERY DOS SANTOS, as Personal
Representative of the Estate of MARCELO
AUGUSTO MATHIAS DA SILVA, deceased,

ROSÂNGELA MARIA DOS SANTOS SILVA
LOUREIRO, as Personal Representative of the
Estate of CLEBER SANTANA LOUREIRO, deceased,

SUSANA RIBAS PEREIRA DE JESUS, as
Personal Representative of the Estate of
WILLIAN THIEGO DE JESUS, deceased,

ALINE PENTEADO PEREIRA MACHADO, as
Personal Representative of the Estate of
FILIPE JOSE MACHADO, deceased,

VENELANDA DUMKE, as Personal Representative
of the Estate of ANDERSON ROBERTO
MARTINS, deceased,

LETÍCIA DOS ANJOS GABRIEL, as Personal
Representative of the Estate of MARCOS
DANILO PADILHA, deceased,

PAULINHO GOBBATO, as Personal
Representative of the Estate of RAFAEL
CORREA GOBBATO, deceased,

LUIZ MAURO GROHS, as Personal
Representative of the Estate of LUIZ
FELIPE GROHS, deceased,

AJUSSARA ENRISCO, as Personal Representative
Of the Estate of RAFAEL VALMORBIDA,

GRACIELA MISSEL, as Personal Representative
of the Estate of MARCIO BESTENE KOURY,
deceased,

ILKA APARECIDA LABES PEIXOTO, as
Personal Representative of the Estate of
DELFIM PADUA PEIXOTO, deceased,

SANDRA JACQUELINE MADRID LUCAS
CASTILLO, as Personal Representative of the
Estate of ANDERSON DONIZETI LUCAS,
Deceased,

DICLEIA JOHANN DE JESUS, as Personal
Representative of the Estate of SERGIO LUIZ
FERREIRA DE JESUS, deceased,

AMANDA DOS SANTOS MACHADO, as Personal
Representative of the Estate of DENER ASSUNCAO
BRAZ, deceased,

ALAN RUSCHEL,

ANA CLAUDIA SEVERO, as Personal
Representative of the Estate of EDUARDO
LUIS PREUSS, deceased,

FABIENNE BELLE, as Personal Representative
of the Estate of LUIS CESAR MARTINS CUNHA,
deceased,

EZIQUIELA CALDERON GALIOTTO, as Personal
Representative of the Estate of GELSON GALIOTTO,
Deceased,

CRISTIANI VICENTINI, as Personal Representative of
the Estate of RENAN CARLOS AGNOLIN, deceased,

3

FERNANDA AMORIM DE ABREU, as Personal
Representative of the Estate of ARTHUR BRASILIANO
MAIA, deceased,


MAURI ANTONIO DA SILVA, as Personal
Representative of the Estate of BRUNO MAURI DA
SILVA, deceased,

ADRIANA DE OLIVEIRA SAROLI, as Personal
Representative of the Estate of LUIZ CARLOS
SAROLI, deceased,

SUELI SALETE DE CASTRO, as Personal Representative
of the Estate of EDUARDO DE CASTRO, deceased,

XIMENA SUAREZ OTTERBURG,

RAQUEL DONAIDE CORONEL BENAGAS, as Personal
Representative of the Estate of GUSTAVO FELICIANO
ENCINA NUNEZ, deceased,

ELIZETH ANDREINA SANDOBAL GONZALEZ, as
Personal Representative of the Estate of ANGEL
EDUARDO LUGO UGAS, deceased,

OVIEDO VON BORRIES CABALLERO, as
Personal Representative of the Estate of SISY
GABRIELA ARIAS PARAVICINY, deceased

EDWIN TUMIRI CHOQUE,

PAMELA JUSTINIANO PEDRAZA as Personal
Representative of the Estate of ROMMEL DAVID
VACAFLORES TERRAZAS, deceased

FLORA TARQUI AVILA as Personal Representative
of the Estate of ALEX RICHARD QUISPE GARCIA,
deceased,

LUCAS CASAGRANDE DAL BELLO as Personal
Representative of the Estate of MAURO LUIZ DAL
BELLO, deceased,

               Plaintiffs,

vs.

LINEA AEREA MERIDA INTERNACIONAL
DE AVIACION d/b/a LAMIA CORPORATION S.R.L.,
a foreign corporation, KITE AIR CORPORATION LTD.
a foreign corporation, MARCO ANTONIO ROCHA
VENEGAS, and RICARDO ALBERTO ALBACETE
VIDAL,

               Defendants.

_____/

## PLAINTIFFS' MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT

      The Plaintiffs, pursuant to Fla. R. Civ. P. 1.180 and 1.190(a), as third-party claimants and assignees of rights obtained in settlement agreements they entered with Defendants LaMia, Kite, Mr. Rocha Venegas, and Mr. Albacete, hereby file this Motion for Leave to File a Third-Party Complaint against additional defendants who are liable on the Plaintiffs' claims.

      The Plaintiffs recognize that there are two possible procedures for the addition of non-party defendants to this lawsuit.  One option is to add the defendants pursuant to Rule 1.180, which allows a defendant to serve a complaint upon "a person not a party to the action who is or may be liable to the defendant for all or part of the plaintiff's claim against the defendant, and may also assert any other claim that arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim." Fla. R. Civ. P. 1.180(a).  Because the Plaintiffs have obtained an assignment of rights from the presently named defendants in this lawsuit, they may "step into the shoes" of those defendants and serve a third-party complaint upon others who are liable for plaintiff's damages.  Another option is to add the defendants pursuant to Rule 1.190(a), which allows a party to amend a pleading where, as here, justice so requires.  The courts have interpreted the Florida Rules of Civil Procedure as evidencing a policy of "liberality in granting motions to amend complaints."  *Wackenhut Protective Sys., Inc. v. Key Biscayne Commodore Club Condo. I, Inc.*,

350 So. 2d 1150, 1150 (Fla. 3d DCA 1977).  Under either option, the Plaintiffs may add defendants to this lawsuit.  In support of this motion, the Plaintiffs state the following:

1.      This matter arises out of the November 28, 2016 crash of LaMia Flight 2933.  The plane was carrying the Brazilian Chapecoense soccer team.   The plane descended into the mountainous region near Medellin, Colombia, where it crashed, killing 71 individuals and injuring 6 others on board the subject flight.  The Plaintiffs represent 43 of the individuals who were injured or killed in the accident.

2.      The Plaintiffs filed their original Complaint on November 27, 2018.  The proposed Third-Party Complaint, attached as Exhibit A, includes causes of action against insurers, reinsurers, and insurance brokers involved in placing the subject flight insurance policy that covered the Plaintiffs' claims arising out of the crash of LaMia Flight 2933.  The additional Defendants are BISA SEGUROS Y REASEGUROS, S.A.; TOKIO MARINE KILN SYNDICATES LIMITED, UK; and AON LIMITED UK.

3.      The changes to the complaint reflect two important developments that have occurred since the original complaint was filed.  *First*, having secured judgments against the originally named defendants, the Plaintiffs are now third-party claimants entitled to seek to recover their damages against insurance companies and brokers.  *See, e.g.*, *Conyers v. Balboa Ins. Co.*, 935 F. Supp. 2d 1312, 1316 (M.D. Fla. 2013) ("Under Florida law, an insurance company's promise to pay the extent of a loss may be enforced by a third-party beneficiary even if he possesses no policy in his name."); *Commercial Ins. Consultants, Inc. v. Frenz Enterprises, Inc.*, 696 So. 2d 871, 872 (Fla. 5th DCA 1997) ("Florida permits an insurance broker to be held liable to third parties when the broker is negligent in procuring coverage for a customer, which coverage, had it been in place, would have been available to pay a third party's claim against the customer. But before a third party may seek to recover against the insurance broker, the third party must first be successful in its action against the customer who did not have adequate insurance.").

4.      *Second*, the changes to the complaint reflect that the Plaintiffs here, by virtue of the settlement agreement they reached with the originally named defendants and enforced by this Court, are now assignees of rights held by the defendant-insureds against insurers, reinsurers, and insurance brokers.

WHEREFORE, the Plaintiffs respectfully request that this Court enter an Order granting their Motion for Leave to File a Third-Party Complaint in the form of the Third-Party Complaint attached as Exhibit A.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed via ECF filing and sent via email to  Marco Antonio Rochas Venegas, marv_0405@hotmail.com, 4850 S.W. 63rd Terr., Apr. 413, Davie, FL 33314 on this 11TH day of August, 2020.

Respectfully submitted,

/s/ Steven C. Marks
Steven C. Marks (FBN 516414)
smarks@podhurst.com
Kristina M. Infante (FBN 0112557)
kinfante@podhurst.com
**PODHURST ORSECK, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382

Attorneys for Plaintiffs

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.     2018-039581-CA(08)

PRISCILA ELEN DE SOUZA LIMA, as
Personal Representative of the Estate of
AILTON CESAR JUNIOR ALVES DA SILVA,
deceased,

BÁRBARA CALAZANS MONTEIRO, as
Personal Representative of the Estate of
ANANIAS ALOI CASTRO MONTEIRO,
deceased,

GIRLENE CAMPINHO AZEVEDO
DOMINGUES, as Personal Representative of
the Estate of BRUNO RANGEL DOMINGUES,
deceased,

ARIADINY PATRICYA WEBER, as Personal
Representative of the Estate of EMERSON FABIO
DIDOMENICO, deceased,

PATRÍCIA LUANA GROZA DA SILVA
GIMENEZ, as Personal Representative of the Estate
of GUILHERME GIMENEZ DE SOUZA,
deceased,

VALDÉCIA BORGES DE MORAIS PAIVA, as
Personal Representative of the Estate of
JOSE GILDEIXON CLEMENTE DE PAIVA,
deceased,

AQUINOAN DE SOUSA CARVALHO, as
Personal Representative of the Estate of
LUCAS GOMES DA SILVA,
deceased,

HÉLIO HERMITO ZAMPIER NETO,

ULRIKE OHLWEILER, as Personal Representative of
the Estate of ANDERSON RODRIGUES PAIXAO
DE ARAUJO, deceased,

EXHIBIT "A"

DAIELLI FAUSTINO KEMITC DA SILVA, as
Personal Representative of the Estate of
MATHEUS BITENCOURT DA SILVA, deceased,

GRAZIELE DE AQUINO ALVES VIEIRA, as
Personal Representative of the Estate of TIAGO
DA ROCHA VIEIRA ALVES, deceased,

JAKSON RAGNAR FOLLMANN,

SUELLEN NERY DOS SANTOS, as Personal
Representative of the Estate of MARCELO
AUGUSTO MATHIAS DA SILVA, deceased,

ROSÂNGELA MARIA DOS SANTOS SILVA
LOUREIRO, as Personal Representative of the
Estate of CLEBER SANTANA LOUREIRO, deceased,

SUSANA RIBAS PEREIRA DE JESUS, as
Personal Representative of the Estate of
WILLIAN THIEGO DE JESUS, deceased,

ALINE PENTEADO PEREIRA MACHADO, as
Personal Representative of the Estate of
FILIPE JOSE MACHADO, deceased,

VENELANDA DUMKE, as Personal Representative
of the Estate of ANDERSON ROBERTO
MARTINS, deceased,

LETÍCIA DOS ANJOS GABRIEL, as Personal
Representative of the Estate of MARCOS
DANILO PADILHA, deceased,

PAULINHO GOBBATO, as Personal
Representative of the Estate of RAFAEL
CORREA GOBBATO, deceased,

LUIZ MAURO GROHS, as Personal
Representative of the Estate of LUIZ
FELIPE GROHS, deceased,

AJUSSARA ENRISCO, as Personal Representative
Of the Estate of RAFAEL VALMORBIDA,

2

GRACIELA MISSEL, as Personal Representative
of the Estate of MARCIO BESTENE KOURY,
deceased,

ILKA APARECIDA LABES PEIXOTO, as
Personal Representative of the Estate of
DELFIM PADUA PEIXOTO, deceased,

SANDRA JACQUELINE MADRID LUCAS
CASTILLO, as Personal Representative of the
Estate of ANDERSON DONIZETI LUCAS,
Deceased,

DICLEIA JOHANN DE JESUS, as Personal
Representative of the Estate of SERGIO LUIZ
FERREIRA DE JESUS, deceased,

AMANDA DOS SANTOS MACHADO, as Personal
Representative of the Estate of DENER ASSUNCAO
BRAZ, deceased,

ALAN RUSCHEL,

ANA CLAUDIA SEVERO, as Personal
Representative of the Estate of EDUARDO
LUIS PREUSS, deceased,

FABIENNE BELLE, as Personal Representative
of the Estate of LUIS CESAR MARTINS CUNHA,
deceased,

EZIQUIELA CALDERON GALIOTTO, as Personal
Representative of the Estate of GELSON GALIOTTO,
Deceased,

CRISTIANI VICENTINI, as Personal Representative of
the Estate of RENAN CARLOS AGNOLIN, deceased,

FERNANDA AMORIM DE ABREU, as Personal
Representative of the Estate of ARTHUR BRASILIANO
MAIA, deceased,

MAURI ANTONIO DA SILVA, as Personal
Representative of the Estate of BRUNO MAURI DA
SILVA, deceased,

ADRIANA DE OLIVEIRA SAROLI, as Personal
Representative of the Estate of LUIZ CARLOS
SAROLI, deceased,

SUELI SALETE DE CASTRO, as Personal Representative
of the Estate of EDUARDO DE CASTRO, deceased,

XIMENA SUAREZ OTTERBURG,

RAQUEL DONAIDE CORONEL BENAGAS, as Personal
Representative of the Estate of GUSTAVO FELICIANO
ENCINA NUNEZ, deceased,

ELIZETH ANDREINA SANDOBAL GONZALEZ, as
Personal Representative of the Estate of ANGEL
EDUARDO LUGO UGAS, deceased

OVIEDO VON BORRIES CABALLERO, as
Personal Representative of the Estate of SISY
GABRIELA ARIAS PARAVICINY, deceased

EDWIN TUMIRI CHOQUE,

PAMELA JUSTINIANO PEDRAZA as Personal
Representative of the Estate of ROMMEL DAVID
VACAFLORES TERRAZAS, deceased

FLORA TARQUI AVILA as Personal Representative
of the Estate of ALEX RICHARD QUISPE GARCIA,
deceased,

LUCAS CASAGRANDE DAL BELLO as Personal
Representative of the Estate of MAURO LUIZ DAL
BELLO, deceased,


                    Plaintiffs,

vs.

LINEA AEREA MERIDA INTERNACIONAL
DE AVIACION d/b/a LAMIA CORPORATION S.R.L.,
a foreign corporation, KITE AIR CORPORATION LTD.
a foreign corporation, MARCO ANTONIO ROCHA
VENEGAS, RICARDO ALBERTO ALBACETE
VIDAL, AON UK LIMITED, a foreign corporation,

4

BISA SEGUROS Y REASEGUROS, S.A., a foreign
corporation, TOKIO MARINE KILN SYNDICATES
LIMITED, a foreign corporation, and JOHN DOES 1-25,
foreign corporations,

                       Defendants.

_____/

## SECOND AMENDED COMPLAINT AND THIRD-PARTY COMPLAINT

The Plaintiffs hereby bring this complaint for, where applicable, wrongful death and negligence against the Defendants, and allege:

## INTRODUCTION

1.     This is a civil action brought by various plaintiffs, some who are suing for negligence following a personal injury and others who are suing for wrongful death pursuant to Florida's wrongful-death statute, Fla. Stat. § 768.21, and any other applicable wrongful-death statute, for the incident that occurred on or about November 28, 2016, involving the British Aerospace Avro 146-RJ85, Registration Number CP2933, Serial Number E2348 (the "aircraft"), aboard which were the injured plaintiffs or their decedents, that ran out of fuel and crashed in Colombia (the "subject accident"). The aircraft was being operated by Defendant LaMia Corporation S.R.L. as LaMia Flight 2933 (the "subject flight").

## THE PARTIES

2.     At all times material, Plaintiff PRISCILA ELEN DE SOUZA LIMA was a citizen and resident of Brazil.

3.     At all times material, Plaintiff PRISCILA ELEN DE SOUZA LIMA is or will be the duly appointed Personal Representative of the Estate of AILTON CESAR JUNIOR ALVES DA SILVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent AILTON CESAR JUNIOR

ALVES DA SILVA was a citizen and resident of Brazil. Plaintiff PRISCILA ELEN DE SOUZA LIMA brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.     Barbara Lima da Silva, minor daughter of decedent.

4.     At all times material, Plaintiff BÁRBARA CALAZANS MONTEIRO was a citizen and resident of Brazil.

5.     At all times material, Plaintiff BÁRBARA CALAZANS MONTEIRO is or will be the duly appointed Personal Representative of the Estate of ANANIAS ALOI CASTRO MONTEIRO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ANANIAS ALOI CASTRO MONTEIRO was a citizen and resident of Brazil. Plaintiff BÁRBARA CALAZANS MONTEIRO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.     Enzo Calazans Monteiro, minor son of decedent.

6.     At all times material, Plaintiff GIRLENE CAMPINHO AZEVEDO DOMINGUES was a citizen and resident of Brazil.

7.     At all times material, Plaintiff GIRLENE CAMPINHO AZEVEDO DOMINGUES is or will be the duly appointed Personal Representative of the Estate of BRUNO RANGEL DOMINGUES, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent BRUNO RANGEL DOMINGUES was a citizen and resident of Brazil. Plaintiff GIRLENE CAMPINHO AZEVEDO DOMINGUES brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.     Bárbara Azevedo Domingues, minor daughter of decedent;

    b.  Daniel Azevedo Domingues, minor son of decedent.

  8.  At all times material, Plaintiff ARIADINY PATRICYA WEBER was a citizen and resident of Brazil.

  9.  At all times material, Plaintiff ARIADINY PATRICYA WEBER is or will be the duly appointed Personal Representative of the Estate of EMERSON FABIO DIDOMENICO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent EMERSON FABIO DIDOMENICO was a citizen and resident of Brazil. Plaintiff ARIADINY PATRICYA WEBER brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

    a.  Luca Didomenico, minor son of decedent;

    b.  Laura Weber Didomenico, minor daughter of decedent.

  10.  At all times material, Plaintiff PATRÍCIA LUANA GROZA DA SILVA GIMENEZ was a citizen and resident of Brazil.

  11.  At all times material, Plaintiff PATRÍCIA LUANA GROZA DA SILVA GIMENEZ is or will be the duly appointed Personal Representative of the Estate of GUILHERME GIMENEZ DE SOUZA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent GUILHERME GIMENEZ DE SOUZA was a citizen and resident of Brazil. Plaintiff PATRÍCIA LUANA GROZA DA SILVA GIMENEZ brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

    a.  Ana Clara Groza Da Silva Gimenez, minor daughter of decedent.

  12.  At all times material, Plaintiff VALDÉCIA BORGES DE MORAIS PAIVA was a citizen and resident of Brazil.

13.     At all times material, Plaintiff VALDÉCIA BORGES DE MORAIS PAIVA is or will be the duly appointed Personal Representative of the Estate of JOSE GILDEIXON CLEMENTE DE PAIVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent JOSE GILDEIXON CLEMENTE DE PAIVA was a citizen and resident of Brazil. Plaintiff VALDÉCIA BORGES DE MORAIS PAIVA brings this wrongful-death action in his/her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.     Gabriella Vitória Borges De Paiva, minor daughter of decedent;

b.     Lívia Borges De Paiva, minor daughter of decedent.

14.      At all times material, Plaintiff AQUINOAN DE SOUSA CARVALHO was a citizen and resident of Brazil.

15.     At all times material, Plaintiff AQUINOAN DE SOUSA CARVALHO is or will be the duly appointed Personal Representative of the Estate of LUCAS GOMES DA SILVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent LUCAS GOMES DA SILVA was a citizen and resident of Brazil. Plaintiff AQUINOAN DE SOUSA CARVALHO brings this wrongful-death action in her representative capacity.

16.     At all times material, Plaintiff  HÉLIO HERMITO ZAMPIER NETO was a citizen and resident of Brazil.  Plaintiff HÉLIO HERMITO ZAMPIER NETO was a passenger on and suffered injuries during LaMia Flight 2933.

17.     At all times material, Plaintiff  ULRIKE OHLWEILER was a citizen and resident of Brazil.

18.     At all times material, Plaintiff ULRIKE OHLWEILER is or will be the duly appointed Personal Representative of the Estate of ANDERSON RODRIGUES PAIXAO DE

8

ARAUJO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ANDERSON RODRIGUES PAIXAO DE ARAUJO was a citizen and resident of Brazil. Plaintiff ULRIKE OHLWEILER brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.      Johann Ohlweiler Paixão De Araújo, minor daughter of decedent;

      b.      Jordie Ohlweiler Paixão De Araújo, minor son of decedent.

19.     At all times material, Plaintiff DAIELLI FAUSTINO KEMITC DA SILVA was a citizen and resident of Brazil.

20.     At all times material, Plaintiff DAIELLI FAUSTINO KEMITC DA SILVA is or will be the duly appointed Personal Representative of the Estate of MATHEUS BITENCOURT DA SILVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent MATHEUS BITENCOURT DA SILVA was a citizen and resident of Brazil. Plaintiff DAIELLI FAUSTINO KEMITC DA SILVA brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.      Miguel Faustino Da Silva, minor son of decedent.

21.     At all times material, Plaintiff GRAZIELE DE AQUINO ALVES VIEIRA was a citizen and resident of Brazil.

22.     At all times material, Plaintiff GRAZIELE DE AQUINO ALVES VIEIRA is or will be the duly appointed Personal Representative of the Estate of TIAGO DA ROCHA VIEIRA ALVES, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent TIAGO DA ROCHA VIEIRA ALVES was a citizen and resident of Brazil. Plaintiff GRAZIELE DE AQUINO ALVES VIEIRA brings

this wrongful-death action in his/her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.    Tiago Da Rocha Vieira Alves, minor son of decedent.

23.    At all times material, Plaintiff JAKSON RAGNAR FOLLMANN was a citizen and resident of Brazil.  Plaintiff JAKSON RAGNAR FOLLMANN was a passenger on and suffered injuries during LaMia Flight 2933.

24.    At all times material, Plaintiff SUELLEN NERY DOS SANTOS was a citizen and resident of Brazil.

25.    At all times material, Plaintiff SUELLEN NERY DOS SANTOS is or will be the duly appointed Personal Representative of the Estate of MARCELO AUGUSTO MATHIAS DA SILVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent MARCELO AUGUSTO MATHIAS DA SILVA was a citizen and resident of Brazil. Plaintiff SUELLEN NERY DOS SANTOS brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.    João Arthur Mathias Nery, minor son of decedent.

26.    At all times material, Plaintiff ROSÂNGELA MARIA DOS SANTOS SILVA LOUREIRO was a citizen and resident of Brazil.

27.    At all times material, Plaintiff ROSÂNGELA MARIA DOS SANTOS SILVA LOUREIRO is or will be the duly appointed Personal Representative of the Estate of CLEBER SANTANA LOUREIRO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent CLEBER SANTANA LOUREIRO was a citizen and resident of Brazil. Plaintiff ROSÂNGELA MARIA

10

DOS SANTOS SILVA LOUREIRO brings this wrongful-death action in his/her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.    Cleber Santana Loureiro Júnior, minor son of decedent;

      b.    Aroldo José Pereira Loureiro Neto, minor son of decedent.

28.    At all times material, Plaintiff SUSANA RIBAS PEREIRA DE JESUS was a citizen and resident of Brazil.

29.    At all times material, Plaintiff SUSANA RIBAS PEREIRA DE JESUS is or will be the duly appointed Personal Representative of the Estate of WILLIAN THIEGO DE JESUS deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent WILLIAN THIEGO DE JESUS was a citizen and resident of Brazil. Plaintiff SUSANA RIBAS PEREIRA DE JESUS brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.    Nina Ribas De Jesus, minor daughter of decedent.

30.    At all times material, Plaintiff ALINE PENTEADO PEREIRA MACHADO was a citizen and resident of Brazil.

31.    At all times material, Plaintiff ALINE PENTEADO PEREIRA MACHADO is or will be the duly appointed Personal Representative of the Estate of FILIPE JOSE MACHADO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent FILIPE JOSE MACHADO was a citizen and resident of Brazil. Plaintiff ALINE PENTEADO PEREIRA MACHADO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.    Antonella Pereira Machado, minor daughter of decedent.

32.     At all times material, Plaintiff VENELANDA DUMKE was a citizen and resident of Brazil.

33.     At all times material, Plaintiff VENELANDA DUMKE is or will be the duly appointed Personal Representative of the Estate of ANDERSON ROBERTO MARTINS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ANDERSON ROBERTO MARTINS, was a citizen and resident of Brazil. Plaintiff VENELANDA DUMKE brings this wrongful-death action in his/her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

   a.     Eloisa Dumke Martins, minor daughter of decedent;

   b.     Isabela Dumke Martins, minor daughter of decedent;

   c.     Anderson Roberto Martins Junior, son of decedent.

34.     At all times material, Plaintiff LETÍCIA DOS ANJOS GABRIEL was a citizen and resident of Brazil.

35.     At all times material, Plaintiff LETÍCIA DOS ANJOS GABRIEL is or will be the duly appointed Personal Representative of the Estate of MARCOS DANILO PADILHA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent MARCOS DANILO PADILHA was a citizen and resident of Brazil. Plaintiff LETÍCIA DOS ANJOS GABRIEL brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

   a.     Lorenzo Gabriel Padilha, minor son of decedent.

36.     At all times material, Plaintiff PAULINHO GOBBATO was a citizen and resident of Brazil.

37.     At all times material, Plaintiff PAULINHO GOBBATO is or will be the duly appointed Personal Representative of the Estate of RAFAEL CORREA GOBBATO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent RAFAEL CORREA GOBBATO was a citizen and resident of Brazil. Plaintiff PAULINHO GOBBATO brings this wrongful-death action in his representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.     Vivian Da Pieve Antunes, daughter of decedent;

        b.     Maria De Lourdes Correa Gobbato, daughter of decedent.

38.     At all times material, Plaintiff LUIZ MAURO GROHS was a citizen and resident of Brazil.

39.     At all times material, Plaintiff LUIZ MAURO GROHS is or will be the duly appointed Personal Representative of the Estate of LUIZ FELIPE GROHS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent LUIZ FELIPE GROHS was a citizen and resident of Brazil. Plaintiff LUIZ MAURO GROHS brings this wrongful-death action in his representative capacity.

40.     At all times material, Plaintiff AJUSSARA ERSICO was a citizen and resident of Brazil.

41.     At all times material, Plaintiff AJUSSARA ERSICO is or will be the duly appointed Personal Representative of the Estate of RAFAEL VALMORBIDA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent RAFAEL VALMORBIDA was a citizen and resident of Brazil. Plaintiff AJUSSARA ERSICO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.      Otavio Torquato Valmorbida, minor son of decedent;

42.     At all times material, Plaintiff GRACIELA MISSEL was a citizen and resident of Brazil.

43.     At all times material, Plaintiff GRACIELA MISSEL is or will be the duly appointed Personal Representative of the Estate of MARCIO BESTENE KOURY, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent MARCIO BESTENE KOURY was a citizen and resident of Brazil. Plaintiff GRACIELA MISSEL brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.      Isabela Missel Bestene Koury, minor daughter of decedent;

        b.      Ana Carolina Missel Correa, minor step-daughter of decedent.

44.     At all times material, Plaintiff ILKA APARECIDA LABES PEIXOTO was a citizen and resident of Brazil.

45.     At all times material, Plaintiff ILKA APARECIDA LABES PEIXOTO is or will be the duly appointed Personal Representative of the Estate of DELFIM PADUA PEIXOTO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent DELFIM PADUA PEIXOTO was a citizen and resident of Brazil. Plaintiff ILKA APARECIDA LABES PEIXOTO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.      Bianka Labes Peixoto Graff, daughter of decedent;

        b.      Emanuella Labes Peixoto, daughter of decedent;

        c.      Delfim Mario Padua Peixoto Neto, son of decedent.

46.     At all times material, Plaintiff SANDRA JACQUELINE MADRID LUCAS CASTILLO was a citizen and resident of Brazil.

47.     At all times material, Plaintiff SANDRA JACQUELINE MADRID LUCAS CASTILLO is or will be the duly appointed Personal Representative of the Estate of ANDERSON DONIZETI LUCAS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ANDERSON DONIZETI LUCAS was a citizen and resident of Brazil. Plaintiff SANDRA JACQUELINE MADRID LUCAS CASTILLO brings this wrongful-death action in her representative capacity.

48.     At all times material, Plaintiff DICLEIA JOHANN DE JESUS was a citizen and resident of Brazil.

49.     At all times material, Plaintiff DICLEIA JOHANN DE JESUS is or will be the duly appointed Personal Representative of the Estate of SERGIO LUIZ FERREIRA DE JESUS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent SERGIO LUIZ FERREIRA DE JESUS was a citizen and resident of Brazil. Plaintiff DICLEIA JOHANN DE JESUS brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

       a.     Vanessa Johann de Jesus, daughter of decedent;

       b.     Luiz Antonio Johann de Jesus, minor son of decedent.

50.     At all times material, Plaintiff AMANDA DOS SANTOS MACHADO was a citizen and resident of Brazil.

51.     At all times material, Plaintiff AMANDA DOS SANTOS MACHADO is or will be the duly appointed Personal Representative of the Estate of DENER ASSUNCAO BRAZ, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin

under applicable law. At all times material, Decedent DENER ASSUNCAO BRAZ was a citizen and resident of Brazil. Plaintiff AMANDA DOS SANTOS MACHADO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

       a.     Bernardo Braz Machado, minor son of decedent.

52.    At all times material, Plaintiff ALAN RUSCHEL was a citizen and resident of Brazil.  Plaintiff ALAN RUSCHEL was a passenger on and suffered injuries during the crash of LaMia Flight 2933.

53.    At all times material, Plaintiff ANA CLAUDIA SEVERO was a citizen and resident of Brazil.

54.    At all times material, Plaintiff ANA CLAUDIA SEVERO is or will be the duly appointed Personal Representative of the Estate of EDUARDO LUIS PREUSS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent EDUARDO LUIS PREUSS was a citizen and resident of Brazil. Plaintiff ANA CLAUDIA SEVERO brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

       a.     Gabrielle Luiza Preuss, daughter of decedent.

55.    At all times material, Plaintiff FABIENNE BELLE was a citizen and resident of Brazil.

56.    At all times material, Plaintiff FABIENNE BELLE is or will be the duly appointed Personal Representative of the Estate of LUIS CESAR MARTINS CUNHA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent LUIS CESAR MARTINS CUNHA was a citizen and resident

of Brazil. Plaintiff FABIENNE BELLE brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.     Nazare Gaudencia Cunha, mother of decedent.

57.    At all times material, Plaintiff EZIQUIELA CALDERON GALIOTTO was a citizen and resident of Brazil.

58.    At all times material, Plaintiff EZIQUIELA CALDERON GALIOTTO is or will be the duly appointed Personal Representative of the Estate of GELSON GALIOTTO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent GELSON GALIOTTO was a citizen and resident of Brazil. Plaintiff EZIQUIELA CALDERON GALIOTTO brings this wrongful-death action in his/her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

      a.     Emilly Gabrieli Galiotto, daughter of decedent.

59.    At all times material, Plaintiff CRISTIANI VICENTINI was a citizen and resident of Brazil.

60.    At all times material, Plaintiff CRISTIANI VICENTINI is or will be the duly appointed Personal Representative of the Estate of RENAN CARLOS AGNOLIN, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent RENAN AGNOLIN was a citizen and resident of Brazil. Plaintiff CRISTIANI VICENTINI brings this wrongful-death action in her representative capacity.

61.    At all times material, Plaintiff FERNANDA AMORIM DE ABREU was a citizen and resident of Brazil.

62.    At all times material, Plaintiff FERNANDA AMORIM DE ABREU is or will be the duly appointed Personal Representative of the Estate of ARTHUR BRASILIANO MAIA,

17

deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ARTHUR BRASILIANO MAIA was a citizen and resident of Brazil. Plaintiff FERNANDA AMORIM DE ABREU brings this wrongful-death action in her representative capacity.

63.    At all times material, Plaintiff MAURI ANTONIO DA SILVA was a citizen and resident of Brazil.

64.    At all times material, Plaintiff MAURI ANTONIO DA SILVA is or will be the duly appointed Personal Representative of the Estate of BRUNO MAURI DA SILVA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent BRUNO MAURI DA SILVA was a citizen and resident of Brazil. Plaintiff MAURI ANTONIO DA SILVA brings this wrongful-death action in his representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.    Adriana Izabel da Silva, mother of decedent.

65.    At all times material, Plaintiff ADRIANA DE OLIVEIRA SAROLI was a citizen and resident of Brazil.

66.    At all times material, Plaintiff ADRIANA DE OLIVEIRA SAROLI is or will be the duly appointed Personal Representative of the Estate of LUIZ CARLOS SAROLI, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent LUIZ CARLOS SAROLI was a citizen and resident of Brazil. Plaintiff ADRIANA DE OLIVEIRA SAROLI brings this wrongful-death action in his representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.    Gabriel de Oliveira Saroli, son of decedent;

b.      Matheus de Oliveira Saroli, son of decedent.

67.     At all times material, Plaintiff EDUARDO DE CASTRO was a citizen and resident of Brazil.

68.     At all times material, Plaintiff EDUARDO DE CASTRO is or will be the duly appointed Personal Representative of the Estate of EDUARDO DE CASTRO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent EDUARDO DE CASTRO was a citizen and resident of Brazil. Plaintiff EDUARDO DE CASTRO brings this wrongful-death action in his representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.      Sueli Salete de Castro, mother of decedent.

69.     At all times material, Plaintiff XIMENA SUAREZ OTTERBURG was a citizen and resident of Bolivia.

70.     At all times material, Plaintiff XIMENA SUAREZ OTTERBURG was a citizen and resident of Bolivia.  Plaintiff XIMENA SUAREZ OTTERBURG was a passenger on and suffered injuries during LaMia Flight 2933.

71.     At all times material, Plaintiff RAQUEL DONAIDE CORONEL BENAGAS was a citizen and resident of Paraguay.

72.     At all times material, Plaintiff RAQUEL DONAIDE CORONEL BENAGAS is or will be the duly appointed Personal Representative of the Estate of GUSTAVO FELICIANO ENCINA NUNEZ, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent GUSTAVO FELICIANO ENCINA NUNEZ was a citizen and resident of Paraguay. Plaintiff RAQUEL DONAIDE CORONEL BENAGAS brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

19

a.      Andrea Monstserrah Encina Coronel, minor daughter of decedent.

73.    At all times material, Plaintiff ELIZETH ANDREINA SANDOBAL GONZALEZ was a citizen and resident of Venezuela.

74.    At all times material, Plaintiff ELIZETH ANDREINA SANDOBAL GONZALEZ is or will be the duly appointed Personal Representative of the Estate of ANGEL EDUARDO LUGO UGAS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ANGEL EDUARDO LUGO UGAS was a citizen and resident of Venezuela. Plaintiff ELIZETH ANDREINA SANDOBAL GONZALEZ brings this wrongful-death action in her representative capacity.

75.    At all times material, Plaintiff, OVIEDO VON BORRIES RIBERA, was a citizen and resident of Bolivia.

76.    At all times material, Plaintiff OVIEDO VON BORRIES RIBERA is or will be the duly appointed Personal Representative of the Estate of SISY GABRIELA ARIAS PARAVICINY, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent SISY GABRIELA ARIAS PARAVICINY was a citizen and resident of Bolivia. Plaintiff OVIEDO VON BORRIES RIBERA, brings this wrongful-death action in his representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.      Mariana Von Borries Arias, minor daughter of decedent;

b.      Matias Von Borries Arias, minor son of decedent.

77.    At all times material, Plaintiff ERWIN TUMIRI CHOQUE was a citizen and resident of Bolivia.  Plaintiff, ERWIN TUMIRI CHOQUE was a passenger on and suffered injuries during the crash of LaMia Flight 2933.

20

78.     At all times material, Plaintiff, PAMELA JUSTINIANO PEDRAZA, was a citizen and resident of Bolivia.

79.     At all times material, Plaintiff PAMELA JUSTINIANO PEDRAZA is or will be the duly appointed Personal Representative of the Estate of ROMMEL DAVID VACAFLORES TERRAZAS, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ROMMEL DAVID VACAFLORES TERRAZAS was a citizen and resident of Bolivia. Plaintiff PAMELA JUSTINIANO PEDRAZA, brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.      Juliana Vacaflores Justiniano, minor daughter of decedent;

80.     At all times material, Plaintiff, FLORA TARQUI AVILA GONZALEZ, was a citizen and resident of Bolivia.

81.     At all times material, Plaintiff FLORA TARQUI AVILA GONZALEZ is or will be the duly appointed Personal Representative of the Estate of ALEX RICHARD QUISPE GARCIA, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent ALEX RICHARD QUISPE GARCIA was a citizen and resident of Bolivia.  Plaintiff, FLORA TARQUI AVILA GONZALEZ, brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

        a.      Gonzalo Alex Quispe Aduviri, minor son of decedent;

        b.      Braynt Anibal Quispe Oyardo, minor son of decedent.

82.     At all times material, Plaintiff, LUCAS CASAGRANDE DAL BELLO, was a citizen and resident of Brazil.

83.     At all times material, Plaintiff LUCAS CASAGRANDE DAL BELLO is or will be the duly appointed Personal Representative of the Estate of MAURO LUIZ DAL BELLO, deceased, or is otherwise the appropriate and representative survivor, beneficiary, or next of kin under applicable law. At all times material, Decedent MAURO LUIZ DAL BELLO was a citizen and resident of Bolivia.  Plaintiff,  LUCAS CASAGRANDE DAL BELLO, brings this wrongful-death action in her representative capacity and on behalf of all potential survivors, including, but not limited to, the following:

a.      Thalia Casagrande dal Bello, daughter of decedent;

b.      Leticia Casagrande dal Bello, daughter of decedent.

84.     The decedents referenced in this Complaint were all passengers aboard the subject flight.

85.     At all times material, Defendant Línea Aérea Mérida Internacional de Aviación d/b/a LaMia Corporation S.R.L. ("LaMia") was and is organized under the laws of Bolivia, with its principal place of business in Miami, Florida.

86.     At all times material, Defendant Marco Antonio Rocha Venegas, a citizen and resident of Broward County, Florida, was an officer and managing partner of Defendant LaMia.

87.     At all times material, the aircraft was owned by Defendant Kite Air Corporation Ltd. ("Kite"), a company that was and is organized under the laws of Hong Kong.

88.     At all times material, Defendant Ricardo Alberto Albacete Vidal, a citizen and resident of Spain, owned Defendant Kite. Alternatively, Defendant Ricardo Alberto Albacete Vidal, a natural person, has been doing business as Kite Air Corporation Ltd.

89.     At all times material, the aircraft was owned by Defendant Ricardo Alberto Albacete Vidal, who was and is a citizen of Spain.

22

90.     At all times material, BISA was and is organized under the laws of Bolivia, with its principal place of business in Bolivia.  BISA was the insurance company that provided flight insurance covering the subject accident.

91.     At all times material, AON UK Limited was and is organized under the laws of England, with its principal place of business in England.  AON UK Limited was and is the insurance broker who placed the flight insurance policy covering the subject accident.

92.     At all times material, Tokio Marine Kiln Syndicates Limited was and is organized under the laws of England, with its principal place of business in England.  Tokio Marine was and is the lead reinsurer subscribed the reinsurance policy covering the subject accident.

93.     At all times material, John Does 1-25 are entities subscribed to the reinsurance policy covering the accident.  Because the Plaintiffs do not presently possess a copy of the flight reinsurance policy, the specific identities of John Does 1-25 are unknown.  The Plaintiffs expect that they will be able to amend this Complaint once obtain a copy of the flight reinsurance policy and, at that point, they will name the specific entities and/or individuals subscribed to the flight reinsurance policy.

## JURISDICTIONAL ALLEGATIONS

94.     This is an action for damages in excess of Fifteen Thousand Dollars ($15,000.00), exclusive of costs, interest, and attorneys' fees, and is therefore within the jurisdictional limits of this Court.

95.     Venue is proper in Miami-Dade County because the Defendants either reside in Miami-Dade County or conducted business in Miami-Dade County.

96.     At all times material, LaMia engaged in substantial and not isolated activity within Florida. LaMia has continuous and systematic business contacts in Florida that are extensive and pervasive. LaMia has its nucleus of operations and nerve center in Florida and is so heavily engaged in activity in Florida as to render it essentially at home in Florida because, among other things:

    a.    LaMia's officers and agents reside and perform work on behalf of LaMia in Florida;

    b.    LaMia's officers and agents performed high-level, executive tasks in Florida, such as negotiating and procuring insurance coverage for its operations, including the insurance policy that was placed on the aircraft at the time of the subject flight;

    c.    LaMia's officers and agents made business decisions in Florida, including which coverage to place on its operations;

    d.    LaMia's officers coordinated flights, procured operations licenses, and solicited and negotiated business from Florida; and

    e.    LaMia's managing partner, Marco Antonio Rocha Venegas, is a citizen and resident of Florida, where he continues to run LaMia's business affairs, including making decisions about LaMia's liability exposure following the subject accident.

97.     At all times material, Kite engaged in substantial and not isolated activity within Florida. Kite has continuous and systematic business contacts in Florida that are extensive and pervasive. Kite has its nucleus of operations and nerve center in Florida and is so heavily engaged in activity in Florida as to render it essentially at home in Florida because, among other things:

    a.    Kite's officers and agents reside and perform work on behalf of Kite in Florida;

    b.    Kite's officers and agents performed high-level, executive tasks in Florida, such as negotiating and procuring insurance coverage for its operations, including the insurance policy that was placed on the aircraft at the time of the subject flight;

    c.    Kite's officers and agents made business decisions in Florida, including which coverage to place on its operations;

  d. Kite's officers coordinated flights, procured operations licenses, and solicited and negotiated business from Florida; and

  e. Kite's owner, Ricardo Albacete, is a citizen and resident of Florida.

98. At all times material, Ricardo Albacete has operated and done business individually, or as Kite Air Corporation Ltd., in Florida, including by:

  a. Making decisions about LaMia and Kite's affairs from Florida, such as negotiating and procuring insurance coverage for Kite's operations, including the insurance policy that was placed on the aircraft at the time of the subject flight; and

  b. Having agents residing permanently in Florida and carrying tasks on his behalf in Florida.

99. At all times material, Marco Antonio Rocha Venegas, in his capacity as an agent, officer, and managing partner of LaMia, has operated and done business in Florida, including by:

  a. Making decisions about LaMia's affairs from Florida, including decisions about LaMia's liability exposure following the subject accident as well as LaMia's viability as a company;

  b. Overseeing LaMia's policies, practices, and operations, including those relevant to the subject accident, from Florida.

100. At all times material, Loredana Albacete, a citizen of Spain, acted as an agent of LaMia, and/or Kite, and/or Ricardo Albacete, and/or Marco Antonio Rocha Venegas, and in that capacity carried out high-level functions for the Defendants, made corporate-level decisions for the Defendants, and handled the Defendants' business affairs, including negotiating contracts, deals, flights, and ventures on their behalf; applying for and securing licenses, permits, and insurance on their behalf; and acting as the center repository and conduit of the Defendants' business communications and information. Loredana Albacete performed these functions from Miami, Florida, and at all times material resided there. Specifically, Loredana Albacete, on behalf of LaMia, and/or Kite, and/or Ricardo Albacete, and/or Marco Antonio Rocha Venegas, negotiated

and secured the flight insurance policies and reinsurance policies for the subject flight from her residence in Miami, Florida.

101.    At all times material, AON UK Limited engaged in substantial and not isolated activity within Florida. AON UK Limited has continuous and systematic business contacts in Florida that are extensive and pervasive. Specifically, AON UK Limited operated and did business in Florida with respect to the events giving rise to this lawsuit, including by:

  a.    Contracting to procure insurance for LaMia, whose officers and agents operated and resided in Miami, Florida at the time the negotiations and written and/or implied contract to procure insurance were entered into;

  b.    Communicating directly with Loredana Albacete, who was primarily responsible for securing insurance of behalf of LaMia, on the subject of the procurement of the subject flight insurance policies in Miami, Florida, where Loredana Albacete resided;

  c.    Acting as insurance broker for flight insurance policies within a policy territory, which included all territories within the United States of America.

102.    At all times material, BISA Seguros y Reaseguros, S.A., engaged in substantial and not isolated activity within Florida. BISA Seguros y Reaseguros, S.A. has continuous and systematic business contacts in Florida that are extensive and pervasive. Specifically, BISA Seguros y Reaseguros, S.A. operated and did business in Florida with respect to the events giving rise to this lawsuit, including by:

  a.    Contracting to provide insurance for LaMia, whose officers and agents operated and resided in Miami, Florida at the time the negotiations took place and the subject flight insurance and reinsurance policies were entered into;

  b.    Communicating directly with Loredana Albacete, who was primarily responsible for securing insurance of behalf of LaMia, on the subject of the subject flight insurance policies in Miami, Florida, where Loredana Albacete resided;

  c.    Providing flight insurance within a policy territory, which included all territories within the United States of America, including Miami, Florida;

      d.     Agreeing to cover accidents and furnish a defense to its insured within a policy territory, which included all territories within the United States of America, including Miami, Florida.

103.    At all times material, Tokio Marine Kiln Syndicates Limited engaged in substantial and not isolated activity within Florida. Tokio Marine Kiln Syndicates Limited has continuous and systematic business contacts in Florida that are extensive and pervasive. Specifically, Tokio Marine Kiln Syndicates Limited operated and did business in Florida with respect to the events giving rise to this lawsuit, including by:

      a.     Contracting to provide a flight reinsurance policy that named as an insured LaMia, whose officers and agents operated and resided in Miami, Florida at the time the negotiations took place and the subject flight insurance and reinsurance policies were entered into;

      b.     Communicating directly with Loredana Albacete, who was primarily responsible for securing insurance of behalf of LaMia, on the subject of the subject flight insurance policies in Miami, Florida, where Loredana Albacete resided;

      c.     Providing flight insurance within a policy territory, which included all territories within the United States of America, including Miami, Florida;

      d.     Agreeing to cover accidents and furnish a defense to its insured within a policy territory, which included all territories within the United States of America, including Miami, Florida.

104.    At all times material, John Does 1-25 engaged in substantial and not isolated activity within Florida. Specifically, John Does 1-25 operated and did business in Florida with respect to the events giving rise to this lawsuit, including by:

      a.     Subscribing to a flight reinsurance policy that named as an insured LaMia, whose officers and agents operated and resided in Miami, Florida at the time the negotiations took place and the subject flight insurance and reinsurance policies were executed;

      b.     Subscribing to a flight reinsurance policy that provided coverage within a policy territory, which included all territories within the United States of America, including Miami, Florida

## **GENERAL ALLEGATIONS**

105.    Chapecoense, a Brazilian soccer team (officially called Associação Chapecoense de Futebol), contracted with LaMia to transport players, staff, and others from Brazil to Colombia for a soccer match.

106.    On November 27, 2016, the day before the subject flight, LaMia made two requests to the Brazilian Aeronautical Authority to transport the team and others by air from Brazil directly to Colombia.

107.    The Brazilian Aeronautical Authority, however, rejected both requests because LaMia, a Bolivian entity, did not comply with Brazilian regulations, which required that charter flights be conducted by operators belonging to the country of origin (Brazil) or destination (Colombia).

108.    In light of that decision by the Brazilian Aeronautical Authority, LaMia arranged for the Chapecoense team and staff to travel on a regular passenger flight from Guarulhos, Brazil, to Santa Cruz, Bolivia, where they would rendezvous with the aircraft.

109.    On November 28, 2016, LaMia flew the aircraft from Cochabamba, Bolivia, where it was stationed, to Santa Cruz, Bolivia, where it met with the soccer team for the subject flight.

110.    According to the original flight plan prepared by LaMia, the proposed flight route had the aircraft taking off from Santa Cruz, Bolivia, towards the ultimate destination of Rionegro, Colombia, with a stop to refuel in Cobija, Bolivia, which is located between Santa Cruz and Rionegro.

111.    Midflight, however, the flight crew—LaMia's agents—changed the flight plan, electing to forgo the fuel stop in Cobija and head directly to Rionegro.

28

112.    The flight crew knew or should have known that, by failing to refuel, the aircraft would be at dangerously low fuel levels by the time it reached Rionegro, in violation of multiple international standards and protocols concerning fuel reserves as well as industry minimum fuel requirements for the aircraft, all of which required the aircraft to have at least one extra hour of fuel reserved for the subject flight.

113.    For instance, before reaching Rionegro, the flight crew had multiple conversations concerning the low fuel levels of the aircraft.

114.    At one point, one of the pilots even recommended that they refuel at an airport in Bogota, Colombia, which was closer than the airport in Rionegro to their then-current location.

115.    The flight crew, however, ultimately elected not to stop to refuel, and instead maintained course towards Rionegro.

116.    By the time the aircraft approached Rionegro, the crew knew or should have known that it had reached critical fuel levels and that it was unreasonably dangerous to continue flying. At the very least, the flight crew knew that they lacked the one-hour fuel reserve required by intentional, national, and industry standards for the subject flight.

117.    Once the aircraft entered Rionegro airspace, Colombian air traffic control ("ATC") instructed the flight crew to enter multiple holding patterns because the airspace was heavily congested.

118.    Despite knowing of the low fuel levels, the flight crew, without objecting to ATC's instructions, entered into the multiple holding patterns.

119.    The pilots failed to notify ATC that they were at dangerously low, emergency levels of fuel when placed in the holding patterns.

120.    It was only when the aircraft reached a second holding pattern that the pilots requested "priority" to approach.

121.    The request for "priority" did not equate to declaring "Minimum Fuel Status" or "MAYDAY" for fuel as indicated by the International Civil Aviation Organization ("ICAO"), which would have notified ATC of an immediate emergency and which would have mandated that the aircraft be given priority to land.

122.    It was not until the aircraft reached a third holding pattern that the pilots finally reported their emergency condition.

123.    At this point, the aircraft ran out of fuel and all engines began to shut down.

124.    Although the pilots had direct knowledge of the aircraft's fuel condition, they failed to alert the cabin crew so that they could prepare the passengers for an emergency descent.

125.    After the loss of power in all engines, the aircraft suffered a complete electrical failure and began its descent into the mountainous region of Antioquia, Colombia, where it crashed, killing 71 individuals and injuring 6 others on board the subject flight.

126.    Had the pilots communicated their emergency conditions to ATC before entering any of the holding patterns, the aircraft would have had enough fuel to land at Rionegro, though the aircraft would still have been well below the required fuel-reserve levels.

127.    Remarkably, LaMia operated the subject flight with a crew that lacked a valid language proficiency license in English.

128.    English is the official language internationally for the operation of aircrafts and must be specified individually in pilot licenses.

129.    The documentation required to carry out the subject flight had an apparent flaw because the pilot-in-command had an expired language proficiency license and the co-pilot did not have one at all.

130.    These licenses are an indispensable requirement for international flights since, as is the case here, emergency status is communicated in English to the ATC.

131.    The flight crew's failure to stop to refuel was a regular practice and procedure of LaMia. Indeed, on three separate occasions—flights on August 23, October 30, and November 5, 2016—LaMia flew flights with planned fuel stops at Cobija, and each time LaMia skipped the refueling and continued towards the ultimate destination, in a pattern that indicates that the crew repeatedly ignored the aircraft's minimum fuel requirements.

132.    LaMia's officers, management, and partners knew or should have known that that practice and procedure presented a substantial risk of injury to the occupants of the aircraft. LaMia's officers, management, and partners also knew that LaMia's pilots lacked the requisite language proficiency to operate international flights.

133.    Despite that, LaMia's officers, management, and partners failed to properly train the flight crew to operate the aircraft in a safe and reasonable manner, failed to ensure that the flight crew possessed the requisite language proficiency to operate international flights, and failed to ensure that LaMia's chartering operations complied with international protocols and industry standards.

## COUNT I
## <u>WRONGFUL DEATH AGAINST LAMIA</u>

134.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

135.    **Duty:** At all times material, the flight crew (including the pilots) of the subject flight were operating the aircraft in the course and scope of their employment with and on behalf of LaMia.

136.    At all times material, LaMia and the flight crew (including the pilots) owed a duty to the decedents and the Plaintiffs to operate and control the aircraft, a passenger-carrying dangerous instrumentality, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

137.    LaMia knew or reasonably should have foreseen that the failure to exercise reasonable care in the operation, control, and maintenance of the aircraft created a broad zone of risk that posed a general threat of harm to the occupants of the subject flight.

138.    **Breach:** At all times material, LaMia and its agents breached their duty of care owed to the occupants of the subject flight, including the decedents and the Plaintiffs, in some or all of the following ways:

>    a.    Failing to properly navigate and operate the aircraft in a safe and competent manner, thereby resulting in the subject accident;

>    b.    Failing to warn passengers on the subject flight of the dangers associated with operation of the aircraft, including failing to notify the passengers of the impending crash;

>    c.    Failing to fly at the proper fuel levels in accordance with the flight plan, regulations of the ICAO, flight manual, or any other law or regulation that applied;

>    d.    Failing to comply with rules, norms, and industry standards regarding proper fuel management for the aircraft and the subject flight;

>    e.    Failing to maintain proper communication with ATC;

32

f.   Failing to comply with rules and norms regarding proper emergency procedures and communications for the aircraft and the subject flight;

g.   Failing to properly oversee and make sure that its crew was qualified to make the subject flight;

h.   Failing to ensure that its crew complied with all licensing requirements and regulations;

i.   Failing to maintain proper maintenance logbooks and flight operations manuals that complied with all applicable laws and regulations;

j.   Failing to assure that its crew was properly trained in air traffic communications for emergency situations; and

k.   Failing to protect against known or foreseeable risks and to take precautionary measures.

139.   **Causation:** LaMia's negligence, through its agents, directly and proximately caused the death of the decedents and the injuries of the Plaintiffs. Furthermore, as the operator of the aircraft, a dangerous instrumentality, LaMia is liable to the decedents and the Plaintiffs for damages regardless of the degree of care exercised and is vicariously liable for the negligent acts and omissions of its agents, whom LaMia entrusted to operate the aircraft. LaMia also knew or reasonably should have foreseen that by failing to operate, control, and maintain the aircraft in a reasonable manner and in conformity with international and industry standards, there was a substantial likelihood that the occupants of the subject flight would be injured.

140.   **Damages:** As a direct and proximate result of LaMia's negligence, the consequent death of the decedents, the Plaintiffs have been damaged and claim all damages to which they individually, the estates, the survivors, and the beneficiaries are entitled, including, as applicable law may provide, but not limited to:

a.   Pain and suffering of the decedents prior to death;

b.   Pain and suffering of the survivors, beneficiaries, and heirs of the decedents;

c.   Lost society, companionship, guidance, and services of the decedents to their survivors, beneficiaries, and heirs;

     d.      Loss of support in money or in kind;

     e.      Lost net accumulations;

     f.      Lost value of life;

     g.      Funeral expenses; and

     h.      Any and all other damages to which the Plaintiffs, survivors, beneficiaries, or the estates of the decedents may be entitled to recover under applicable law.

WHEREFORE, the Plaintiffs demand judgment against LaMia for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT II
## NEGLIGENCE AGAINST LAMIA

141.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

142.    **Duty:** At all times material, the flight crew (including the pilots) of the subject flight were operating the aircraft in the course and scope of their employment with and on behalf of LaMia.

143.    At all times material, LaMia and the flight crew (including the pilots) owed a duty to the decedents and the Plaintiffs to operate and control the aircraft, a passenger-carrying dangerous instrumentality, with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind.

144.    LaMia knew or reasonably should have foreseen that the failure to exercise reasonable care in the operation, control, and maintenance of the aircraft created a broad zone of risk that posed a general threat of harm to the occupants of the subject flight.

145.   **Breach:** At all times material, LaMia and its agents breached their duty of care owed to the occupants of the subject flight, including the decedents and the Plaintiffs, in some or all of the following ways:

a.   Failing to properly navigate and operate the aircraft in a safe and competent manner, thereby resulting in the subject accident;

b.   Failing to warn passengers on the subject flight of the dangers associated with operation of the aircraft, including failing to notify the passengers of the impending crash;

c.   Failing to fly at the proper fuel levels in accordance with the flight plan, regulations of the ICAO, flight manual, or any other law or regulation that applied;

d.   Failing to comply with rules, norms, and industry standards regarding proper fuel management for the aircraft and the subject flight;

e.   Failing to maintain proper communication with ATC;

f.   Failing to comply with rules and norms regarding proper emergency procedures and communications for the aircraft and the subject flight;

g.   Failing to properly oversee and make sure that its crew was qualified to make the subject flight;

h.   Failing to ensure that its crew complied with all licensing requirements and regulations;

i.   Failing to maintain proper maintenance logbooks and flight operations manuals that complied with all applicable laws and regulations;

j.   Failing to assure that its crew was properly trained in air traffic communications for emergency situations; and

k.   Failing to protect against known or foreseeable risks and to take precautionary measures.

146.   **Causation:** LaMia's negligence, through its agents, directly and proximately caused the death of the decedents and the injuries of the Plaintiffs. Furthermore, as the operator of the aircraft, a dangerous instrumentality, LaMia is liable to the decedents and the Plaintiffs for damages regardless of the degree of care exercised and is vicariously liable for the negligent acts

and omissions of its agents, whom LaMia entrusted to operate the aircraft. LaMia also knew or reasonably should have foreseen that by failing to operate, control, and maintain the aircraft in a reasonable manner and in conformity with international and industry standards, there was a substantial likelihood that the occupants of the subject flight would be injured.

147.    **Damages:** As a direct and proximate result of LaMia's negligence, the Plaintiffs suffered serious and permanent injuries, including bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, and medical treatment. The losses are either permanent and continuing and the Plaintiffs will suffer losses in the future.

WHEREFORE, the Plaintiffs demand judgment against LaMia for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT III
## WRONGFUL DEATH AGAINST KITE

148.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

149.    At all times material, Kite was the owner of the aircraft, a dangerous instrumentality under the law.

150.    At all times material, Kite was in control of who could use the aircraft and had a nondelegable obligation to ensure that the aircraft was operated safely and to entrust the aircraft to persons who would exercise reasonable care.

151.    Kite authorized LaMia and its agents to operate the aircraft for the subject flight.

152.    Accordingly, Kite is vicariously and legally liable for the damages resulting from the ownership and operation of the aircraft, since LaMia and its agents were operating the aircraft with Kite's knowledge and consent.

153.    The subject accident was the direct and proximate cause of the decedents' deaths.

154.    As a direct and proximate result of the decedents' deaths, the Plaintiffs have been damaged and claim all damages to which they individually, the estates, the survivors, and the beneficiaries are entitled, including, as applicable law may provide, but not limited to:

      a.    Pain and suffering of the decedents prior to death;

      b.    Pain and suffering of the survivors, beneficiaries, and heirs of the decedents;

      c.    Lost society, companionship, guidance, and services of the decedents to their survivors, beneficiaries, and heirs;

      d.    Loss of support in money or in kind;

      e.    Lost net accumulations;

      f.    Lost value of life;

      g.    Funeral expenses; and

      h.    Any and all other damages to which the Plaintiffs, survivors, beneficiaries, or the estates of the decedents may be entitled to recover under applicable law.

WHEREFORE, the Plaintiffs demand judgment against Kite for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT IV
## NEGLIGENCE AGAINST KITE

155.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

156.    At all times material, Kite was the owner of the aircraft, a dangerous instrumentality under the law.

157.    At all times material, Kite was in control of who could use the aircraft and had a nondelegable obligation to ensure that the aircraft was operated safely and to entrust the aircraft to persons who would exercise reasonable care.

158.    Kite authorized LaMia and its agents to operate the aircraft for the subject flight.

159.    Accordingly, Kite is vicariously and legally liable for the damages resulting from the ownership and operation of the aircraft, since LaMia and its agents were operating the aircraft with Kite's knowledge and consent.

160.    The subject accident was the direct and proximate cause of the Plaintiffs' injuries.

161.    As a direct and proximate result of LaMia's negligence, the Plaintiffs suffered serious and permanent injuries, including bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, and medical treatment. The losses are either permanent and continuing and the Plaintiffs will suffer losses in the future.

WHEREFORE, the Plaintiffs demand judgment against Kite for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT V
## WRONGFUL DEATH AGAINST RICARDO ALBACETE

162.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

163.    At all times material, Ricardo Albacete was the owner of the aircraft, a dangerous instrumentality under the law.

164.    At all times material, Ricardo Albacete was in control of who could use the aircraft and had a nondelegable obligation to ensure that the aircraft was operated safely and to entrust the aircraft to persons who would exercise reasonable care.

165.    Ricardo Albacete authorized LaMia and its agents to operate the aircraft for the subject flight.

166.    Accordingly, Ricardo Albacete is vicariously and legally liable for the damages resulting from the ownership and negligent operation of the aircraft, since LaMia and its agents were operating the aircraft with Ricardo Albacete's knowledge and consent.

167.     The subject accident was the direct and proximate cause of the decedents' deaths.

168.     As a direct and proximate result of the decedents' deaths, the Plaintiffs have been damaged and claim all damages to which they individually, the estates, the survivors, and the beneficiaries are entitled, including, as applicable law may provide, but not limited to:

a.      Pain and suffering of the decedents prior to death;

b.      Pain and suffering of the survivors, beneficiaries, and heirs of the decedents;

c.      Lost society, companionship, guidance, and services of the decedents to their survivors, beneficiaries, and heirs;

d.      Loss of support in money or in kind;

e.      Lost net accumulations;

f.      Lost value of life;

g.      Funeral expenses; and

h.      Any and all other damages to which the Plaintiffs, survivors, beneficiaries, or the estates of the decedents may be entitled to recover under applicable law.

WHEREFORE, the Plaintiffs demand judgment against Ricardo Albacete for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

**COUNT VI**
**NEGLIGENCE AGAINST RICARDO ALBACETE**

169.     The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

170.     At all times material, Ricardo Albacete was the owner of the aircraft, a dangerous instrumentality under the law.

171.     At all times material, Ricardo Albacete was in control of who could use the aircraft and had a nondelegable obligation to ensure that the aircraft was operated safely and to entrust the aircraft to persons who would exercise reasonable care.

172.     Ricardo Albacete authorized LaMia and its agents to operate the aircraft for the subject flight.

173.     Accordingly, Ricardo Albacete is vicariously and legally liable for the damages resulting from the ownership and negligent operation of the aircraft, since LaMia and its agents were operating the aircraft with Ricardo Albacete's knowledge and consent.

174.     The subject accident was the direct and proximate cause of the Plaintiffs' injuries.

175.     As a direct and proximate result of LaMia's negligence, the Plaintiffs suffered serious and permanent injuries, including bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, and medical treatment. The losses are either permanent and continuing and the Plaintiffs will suffer losses in the future.

WHEREFORE, the Plaintiffs demand judgment against Ricardo Albacete for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT VII
## WRONGFUL DEATH AGAINST MARCO ANTONIO ROCHA VENEGAS

176.     The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

177.     **Duty:** At all times material, Marco Antonio Rocha Venegas, in his capacity as an officer and managing partner of LaMia, was responsible for retaining and training the aircraft's flight crew; ensuring that the aircraft's flight crew had the appropriate and necessary documentation, licenses, training, and language proficiencies for the subject flight; ensuring that the aircraft was operated in a safe and reasonable manner and that the subject flight was operated in compliance with national, international, and industry standards concerning fuel reserves; ensuring that LaMia complied with national and international regulations concerning the operation of international flights, including the subject flight; and ensuring that LaMia had the appropriate

40

insurance coverage, licenses, and regulatory permits needed to carry out the subject flight, which involved transporting a Brazilian soccer team.

178.     Marco Antonio Rocha Venegas knew or reasonably should have foreseen that the failure to exercise reasonable care in any of his duties as LaMia's officer and managing partner created a broad zone of risk that posed a general threat of harm to the occupants of LaMia's flights.

179.     Specifically, Marco Antonio Rocha Venegas knew that the Plaintiffs would be occupants in the subject flight, and he knew or reasonably should have foreseen that the failure to exercise reasonable care in the execution of his duties created a broad zone of risk that posed a general threat of harm to the Plaintiffs.

180.     **Breach:** At all times material, Marco Antonio Rocha Venegas breached the duty of care he owed to the occupants of the subject flight, including the decedents and the Plaintiffs, in some or all of the following ways:

a.     Failing to vet, retain, train, and supervise the flight crew of the subject flight;

b.     Failing to ensure that the aircraft's flight crew had the appropriate and necessary documentation, licenses, training, and language proficiencies for the subject flight;

c.     Failing to ensure that the aircraft was operated in a safe and reasonable manner and that the subject flight was operated in compliance with national, international, and industry standards concerning fuel reserves;

d.     Failing to ensure that LaMia complied with national and international regulations concerning the operation of international flights, including the subject flight;

e.     Failing to ensure that LaMia had the appropriate insurance coverage, licenses, and regulatory permits needed to carry out the subject flight, which involved transporting a Brazilian soccer team;

f.     Failing to correct LaMia's negligent practice of bypassing scheduled fuel stops;

41

g.      Failing to warn the known and intended occupants of the subject flight of LaMia's dangerous practices, including the low fuel reserves with which LaMia flew its aircraft;

h.      Failing to ensure that LaMia complied with rules and norms regarding proper emergency procedures and communications for the aircraft and the subject flight;

i.      Failing to properly oversee and make sure that LaMia's crew was qualified to operate the subject flight; and

j.      Failing to protect against known or foreseeable risks and to take precautionary measures.

181.    **Causation:** As a direct and proximate result of Marco Antonio Rocha Venegas' negligence, the subject flight crashed, causing the deaths of the decedents and the injuries of the Plaintiffs. The deaths of the decedents and the injuries of the Plaintiffs were reasonably foreseeable to Marco Antonio Rocha Venegas, who knew or reasonably should have foreseen that his negligence was substantially likely to cause the decedents' deaths and the Plaintiffs' injuries.

182.    **Damages:** As a direct and proximate result of Marco Antonio Rocha Venegas' negligence, and the consequent death of the decedents, the Plaintiffs have been damaged and claim all damages to which they individually, the estates, the survivors, and the beneficiaries are entitled, including, as applicable law may provide, but not limited to:

a.      Pain and suffering of the decedents prior to death;

b.      Pain and suffering of the survivors, beneficiaries, and heirs of the decedents;

c.      Lost society, companionship, guidance, and services of the decedents to their survivors, beneficiaries, and heirs;

d.      Loss of support in money or in kind;

e.      Lost net accumulations;

f.      Lost value of life;

g.      Funeral expenses; and

42

h.   Any and all other damages to which the Plaintiffs, survivors, beneficiaries, or the estates of the decedents may be entitled to recover under applicable law.

WHEREFORE, the Plaintiffs demand judgment against Marco Antonio Rocha Venegas for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demands trial by jury of all issues triable as of right by a jury.

**COUNT VIII**
**NEGLIGENCE AGAINST MARCO ANTONIO ROCHA VENEGAS**

183.   The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

184.   **Duty:** At all times material, Marco Antonio Rocha Venegas, in his capacity as an officer and managing partner of LaMia, was responsible for retaining and training the aircraft's flight crew; ensuring that the aircraft's flight crew had the appropriate and necessary documentation, licenses, training, and language proficiencies for the subject flight; ensuring that the aircraft was operated in a safe and reasonable manner and that the subject flight was operated in compliance with national, international, and industry standards concerning fuel reserves; ensuring that LaMia complied with national and international regulations concerning the operation of international flights, including the subject flight; and ensuring that LaMia had the appropriate insurance coverage, licenses, and regulatory permits needed to carry out the subject flight, which involved transporting a Brazilian soccer team.

185.   Marco Antonio Rocha Venegas knew or reasonably should have foreseen that the failure to exercise reasonable care in any of his duties as LaMia's officer and managing partner created a broad zone of risk that posed a general threat of harm to the occupants of LaMia's flights.

186.   Specifically, Marco Antonio Rocha Venegas knew that the Plaintiffs would be occupants in the subject flight, and he knew or reasonably should have foreseen that the failure to

exercise reasonable care in the execution of his duties created a broad zone of risk that posed a general threat of harm to the Plaintiffs.

187.    **Breach:** At all times material, Marco Antonio Rocha Venegas breached the duty of care he owed to the occupants of the subject flight, including the decedents and the Plaintiffs, in some or all of the following ways:

a.    Failing to vet, retain, train, and supervise the flight crew of the subject flight;

b.    Failing to ensure that the aircraft's flight crew had the appropriate and necessary documentation, licenses, training, and language proficiencies for the subject flight;

c.    Failing to ensure that the aircraft was operated in a safe and reasonable manner and that the subject flight was operated in compliance with national, international, and industry standards concerning fuel reserves;

d.    Failing to ensure that LaMia complied with national and international regulations concerning the operation of international flights, including the subject flight;

e.    Failing to ensure that LaMia had the appropriate insurance coverage, licenses, and regulatory permits needed to carry out the subject flight, which involved transporting a Brazilian soccer team;

f.    Failing to correct LaMia's negligent practice of bypassing scheduled fuel stops;

g.    Failing to warn the known and intended occupants of the subject flight of LaMia's dangerous practices, including the low fuel reserves with which LaMia flew its aircraft;

h.    Failing to ensure that LaMia complied with rules and norms regarding proper emergency procedures and communications for the aircraft and the subject flight;

i.    Failing to properly oversee and make sure that LaMia's crew was qualified to operate the subject flight; and

j.    Failing to protect against known or foreseeable risks and to take precautionary measures.

188. **Causation:** As a direct and proximate result of Marco Antonio Rocha Venegas' negligence, the subject flight crashed, causing the deaths of the decedents and the injuries of the Plaintiffs. The deaths of the decedents and the injuries of the Plaintiffs were reasonably foreseeable to Marco Antonio Rocha Venegas, who knew or reasonably should have foreseen that his negligence was substantially likely to cause the decedents' deaths and the Plaintiffs' injuries.

189. **Damages:** As a direct and proximate result of Marco Antonio Rocha Venegas' negligence, the Plaintiffs suffered serious and permanent injuries, including bodily injury, pain and suffering, disability, mental anguish, loss of capacity for the enjoyment of life, and medical treatment. The losses are either permanent and continuing and the Plaintiffs will suffer losses in the future.

WHEREFORE, the Plaintiffs demand judgment against Marco Antonio Rocha Venegas for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

## COUNT IX
## BREACH OF CONTRACT TO PROCURE INSURANCE AGAINST AON LIMITED UK

190. The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

191. LaMia, through its agents and employees, contracted with AON Limited UK to serve as its broker in obtaining a flight insurance policy.

192. LaMia requested a flight insurance policy with significantly more coverage than AON UK Limited obtained, including higher policy limits. AON UK Limited knew or should have known that the flight insurance and reinsurance policies it negotiated were, on their face, likely to expose LaMia and deprive foreseeable third-party beneficiaries of coverage for their injuries and damages. For example, despite the fact AON UK Limited knew that LaMia routinely flew into Colombia, the flight insurance policy that AON UK Limited brokered and obtained on

LaMia's behalf purports to contain a territorial exclusion for accidents that occur in Colombia. AON UK Limited knew or should have known that the insurers and reinsurers would deny coverage and refuse to defend LaMia in the litigation on the basis of this exclusion, among other things.

193.   The flight insurance policy AON UK Limited ultimately obtained left LaMia exposed in numerous respects, and it deprived the Plaintiffs of compensation for their significant injuries and damages.

WHEREFORE, the Plaintiffs demand judgment against AON Limited UK for all damages suffered by the Plaintiffs and/or LaMia, Kite, Mr. Albacete, and/or Mr. Rocha Venegas as a consequence of AON UK Limited's breach of contract to procure insurance. The Plaintiffs request a trial by jury.

### COUNT X
### NEGLIGENT FAILURE TO PROCURE INSURANCE AGAINST AON LIMITED UK

194.   The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

195.   **Duty:** At all times material, AON Limited UK, in its capacity as an insurance broker, was responsible for procuring sufficient and adequate flight insurance and reinsurance for LaMia, Kite, Mr. Albacete, and Mr. Rocha Venegas. As an insurance broker, AON had a duty to ensure that LaMia had the appropriate insurance coverage needed to cover any accidents, including the accident that gave rise to this lawsuit.

196.   AON Limited UK knew or reasonably should have foreseen that the failure to exercise reasonable care in any of its duties as an insurance broker to procure insurance on behalf of LaMia created a broad zone of risk that posed a general threat of harm to the occupants of LaMia's flights.

197.   **Third Party Beneficiary Status:** The Plaintiffs and the Plaintiff's decedents were passengers on board the subject flight.  The Plaintiffs are third-party beneficiaries to both the flight insurance and reinsurance policies that covered the subject flight *and* the written or implied contract to procure insurance between AON UK Limited and LaMia.  As passengers on board a LaMia-operated flight, the Plaintiffs were the known and expected beneficiaries of the flight insurance and reinsurance policies.  In addition, as assignees of any and all rights to proceed against AON UK Limited arising out of the subject accident and belonging to LaMia, Kite, Mr. Albacete, and/or Mr. Rocha Venegas, the Plaintiffs have supplemental standing to proceed against AON UK Limited for its negligent procurement of inadequate and/or insufficient insurance for LaMia, Kite, Mr. Albacete, and Mr. Rocha Venegas.  The Plaintiffs have already succeeded in an action against the insured, LaMia, which has admitted liability and agreed to entry of judgments totaling $844 million.

198.   **Breach:** AON failed to secure adequate and sufficient insurance for LaMia.  For example, despite the fact AON UK Limited knew that LaMia routinely flew into Colombia, the flight insurance policy that AON UK Limited brokered and obtained on LaMia's behalf purports to contain a territorial exclusion for accidents that occur in Colombia.  It also had insufficient policy limits to cover the foreseeable and expected claims of travelers on board LaMia flights, including the Plaintiffs.

199.   **Causation:** The flight insurance policy AON UK Limited ultimately obtained left LaMia exposed in numerous respects, and it deprived the Plaintiffs of obtaining compensation for their significant injuries and damages.  BISA and the reinsurers denied the existence of coverage, and thus LaMia was not defended or otherwise represented in this litigation by insurer-appointed counsel.  Judgments have been entered against LaMia in the amount of $844 million, and nearly

four years after the accident, the Plaintiffs have still not received any compensation for their horrendous injuries and damages.

200.   **Damages:** Because of AON UK Limited's negligence in negotiating and obtaining an insufficient insurance policy on behalf of LaMia, the Plaintiffs have suffered significant harm.

WHEREFORE, the Plaintiffs demand judgment against AON UK Limited for compensatory damages, costs, and such other relief as this Court deems appropriate, and further demand trial by jury of all issues triable as of right by a jury.

**COUNT XI**
**ALTERNATIVELY, BREACH OF CONTRACT AGAINST BISA**

201.   The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

202.   The Plaintiffs allege, in the alternative, that they are entitled to the full extent of their expectation damages as a result of BISA's breach of contract and the inclusion of unconscionable terms and conditions in the flight insurance policy.

203.   BISA was and is the insurance company, which contracted to provide flight insurance to LaMia.  BISA entered into a contract to provide flight insurance to LaMia for its business operations.  The policy was enforceable and in effect at the time of the subject accident, and it provided that BISA would provide coverage for the subject accident and defend LaMia, its insured, it litigation arising from a covered event.  Despite these provisions, BISA refused to defend LaMia in the litigation and to cover the subject accident.

204.   BISA had contracted with LaMia for many years in the past, and it was aware of LaMia's history of flights and its routine business practices, including the fact that LaMia flights regularly flew into Colombia.  Despite this knowledge, BISA included new terms and conditions, including an apparent territorial limitation on accidents occurring in Colombia, without adequately advising LaMia of these changes, and in contravention of the parties' past dealings.  BISA also

48

WHEREFORE, the Plaintiffs demand judgment against BISA for all damages suffered by the Plaintiffs and/or LaMia, Kite, Mr. Albacete, and/or Mr. Rocha Venegas as a consequence of BISA's breach of contract.  The Plaintiffs request a trial by jury.

**COUNT XII**
**COMMON LAW BAD FAITH AGAINST BISA**

205.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here

206.    The Plaintiffs and LaMia entered into a settlement agreement, which provided for entry of a judgment in favor of Plaintiffs and against LaMia in amounts totaling $844 million.  As part of that agreement, LaMia admitted liability.

207.    The issues of liability and the full extent of the Plaintiffs' damages have been resolved in a binding settlement agreement, and thus the Plaintiffs' third-party bad faith claims have accrued.  The Plaintiffs may now bring this claim as third-party claimants and assignees of rights LaMia had under the subject flight insurance policy.

208.    Defendant BISA failed to timely and properly settle the Plaintiffs' claims against LaMia and protect its insured, even though it knew that liability was reasonably certain and that the damages greatly exceeded the policy limits by many multiples.  Before and during the course of this litigation, BISA had many opportunities to significantly lesson or eliminate the exposure to liability of its insureds.

209.    Defendant BISA, acting in concert with AON and Tokio Marine, failed to properly and reasonably protect its insured, LaMia, and committed bad faith in negotiating and executing the version of the flight insurance policy that was in effect at the time of the subject accident.

210.    Defendant BISA knew or should have known that LaMia's business involved flying passengers in South America, including to Colombia.  It also knew or should have known that LaMia routinely flew many individuals, including soccer teams, on a plane that fit more than 70

passengers on board. BISA, acting in concert with AON and Tokio Marine, failed to properly and reasonably protect its insured, including LaMia, and committed bad faith in negotiating and executing the version of the flight insurance and/or reinsurance policies that were in effect at the time of the subject accident, which contained terms and conditions that did not adequately protect BISA's insureds and failed to meet its insureds' reasonable expectations about the amount and extent of coverage.

WHEREFORE, the Plaintiffs demand judgment against BISA for all damages available on a common law bad faith claim, including the full extent of their damages as negotiated in the settlement agreement entered into with BISA's insured and the judgments entered against LaMia. The Plaintiffs request a trial by jury.

## COUNT XIII
## ALTERNATIVELY, BREACH OF CONTRACT AGAINST TOKIO MARINE

211.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

212.    The Plaintiffs allege, in the alternative, that they are entitled to the full extent of their expectation damages as a result of Tokio Marine's breach of contract and the inclusion of unconscionable terms and conditions in the flight insurance policy

213.    Tokio Marine was and is the insurance company, which contracted to provide flight reinsurance covering LaMia.  The flight reinsurance policy was enforceable and in effect at the time of the subject accident.  Tokio Marine has refused to provide coverage and has otherwise refused to meet its obligations under the flight insurance policy.

WHEREFORE, the Plaintiffs demand judgment against Tokio Marine for all damages suffered by the Plaintiffs and/or LaMia, Kite, Mr. Albacete, and/or Mr. Rocha Venegas as a consequence of Tokio Marine's breach of contract.  The Plaintiffs request a trial by jury.

**COUNT XIV**
**COMMON LAW BAD FAITH AGAINST TOKIO MARINE**

214.     The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

215.     The Plaintiffs and LaMia entered into a settlement agreement, which provided for entry of a judgment in favor of Plaintiffs and against LaMia in amounts totaling $844 million.  As part of that agreement, LaMia admitted liability.

216.     The issues of liability and the full extent of the Plaintiffs' damages have been resolved in a binding settlement agreement, and thus the Plaintiffs' third-party bad faith claims have accrued.  The Plaintiffs may now bring this claim as third-party claimants and assignees of rights LaMia had under the subject flight insurance policy.

217.     Defendant Tokio Marine failed to timely and properly settle the Plaintiffs' claims against LaMia and protect its insured, even though it knew that liability was reasonably certain and that the damages greatly exceeded the policy limits by many multiples.

218.     Defendant Tokio Marine knew or should have known that LaMia's business involved flying passengers in South America, including to Colombia.  It also knew or should have known that LaMia routinely flew many individuals, including soccer teams, on a plane that fit more than 70 passengers on board. Tokio Marine, acting in concert with AON and BISA, failed to properly and reasonably protect its insured, LaMia, and committed bad faith in negotiating and executing the version of the flight insurance and/or reinsurance policies that were in effect at the time of the subject accident, which contained terms and conditions that did not adequately protect Tokio Marine's insureds and failed to meet its insureds' reasonable expectations about the amount and extent of coverage.

WHEREFORE, the Plaintiffs demand judgment against Tokio Marine for all damages available on a common law bad faith claim, including the full extent of their damages as negotiated

in the settlement agreement entered into with Tokio Marine's insured and the judgments entered against LaMia.  The Plaintiffs request a trial by jury.

### COUNT XV
### COMMON LAW BAD FAITH AGAINST JOHN DOES 1-25

219.    The Plaintiffs re-allege and incorporate the allegations of paragraphs 1–132 here.

220.    The Plaintiffs and LaMia entered into a settlement agreement, which provided for entry of a judgment in favor of Plaintiffs and against LaMia in amounts totaling $844 million.  As part of that agreement, LaMia admitted liability.

221.    The issues of liability and the full extent of the Plaintiffs' damages have been resolved in a binding settlement agreement, and thus the Plaintiffs' third-party bad faith claims have accrued.  The Plaintiffs may now bring this claim as third-party claimants and assignees of rights LaMia had under the subject flight insurance policy.

222.    Defendants John Doe 1-25, as subscribers to the reinsurance policy covering the subject accident, failed to timely and properly settle the Plaintiffs' claims against LaMia and protect their insured, even though they knew that liability was reasonably certain and that the damages greatly exceeded the policy limits by many multiples.

223.    Defendants John Doe 1-25 knew or should have known that LaMia's business involved flying passengers in South America, including to Colombia.  They also knew or should have known that LaMia routinely flew many individuals, including soccer teams, on a plane that fit more than 70 passengers on board. Despite this knowledge, John Does 1-25, acting in concert with Tokio Marine, failed to properly and reasonably protect its insured, LaMia, and committed bad faith in negotiating and executing the version of the flight insurance and/or reinsurance policies that were in effect at the time of the subject accident, which contained terms and conditions

that did not adequately protect Tokio Marine's insureds and failed to meet its insureds' reasonable expectations about the amount and extent of coverage.

WHEREFORE, the Plaintiffs demand judgment against John Does 1-25 for all damages available on a common law bad faith claim, including the full extent of their damages as negotiated in the settlement agreement entered into with the insureds listed on the reinsurance policy covering the subject flight and the judgments entered against LaMia.  The Plaintiffs request a trial by jury

Dated: August 11, 2020

Respectfully submitted,

/s/ Steven C. Marks
Steven C. Marks (FBN 516414)
smarks@podhurst.com
Kristina M. Infante (FBN 112557)
kinfante@podhurst.com
**PODHURST ORSECK, P.A.**
One S.E. 3rd Avenue, Suite 2300
Miami, FL 33131
Telephone: (305) 358-2800
Fax: (305) 358-2382

Attorneys for Plaintiffs