**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PRISCILA ELEN DE SOUZA LIMA, as Personal
Representative of the Estate of AILTON CESAR
JUNIOR ALVES DA SILVA, deceased,

BÁRBARA CALAZANS MONTEIRO, as Personal
Representative of the Estate of ANANIAS ALOI
CASTRO MONTEIRO, deceased,

GIRLENE CAMPINHO AZEVEDO
DOMINGUES, as Personal Representative of the
Estate of BRUNO RANGEL DOMINGUES,
deceased,

ARIADINY PATRICYA WEBER, as Personal
Representative of the Estate of EMERSON FABIO
DIDOMENICO, deceased,

PATRÍCIA LUANA GROZA DA SILVA
GIMENEZ, as Personal Representative of the Estate
of GUILHERME GIMENEZ DE SOUZA, deceased,

VALDÉCIA BORGES  DE MORAIS PAIVA, as
Personal Representative of the Estate of JOSE
GILDEIXON CLEMENTE DE PAIVA, deceased,

AQUINOAN DE SOUSA CARVALHO, as
Personal Representative of the Estate of LUCAS
GOMES DA SILVA, deceased,

HÉLIO HERMITO ZAMPIER NETO,

ULRIKE OHLWEILER, as Personal Representative
of the Estate of ANDERSON RODRIGUES
PAIXAO DE ARAUJO, deceased,

DAIELLI FAUSTINO KEMITC DA SILVA, as
Personal Representative of the Estate of MATHEUS
BITENCOURT DA SILVA, deceased,

GRAZIELE DE AQUINO ALVES VIEIRA, as
Personal Representative of the Estate of TIAGO DA
ROCHA VIEIRA ALVES, deceased,
JAKSON RAGNAR FOLLMANN,

CASE NO. 1:20-cv-23631-UU

SUELLEN NERY DOS SANTOS, as Personal
Representative of the Estate of MARCELO
AUGUSTO MATHIAS DA SILVA, deceased,

ROSÂNGELA MARIA DOS SANTOS SILVA
LOUREIRO, as Personal Representative of the
Estate of CLEBER SANTANA LOUREIRO,
deceased,

SUSANA RIBAS PEREIRA DE JESUS, as
Personal Representative of the Estate of WILLIAN
THIEGO DE JESUS, deceased,

ALINE PENTEADO PEREIRA MACHADO, as
Personal Representative of the Estate of FILIPE
JOSE MACHADO, deceased,

VENELANDA DUMKE, as Personal
Representative of the Estate of ANDERSON
ROBERTO MARTINS, deceased,

LETÍCIA DOS ANJOS GABRIEL, as Personal
Representative of the Estate of MARCOS DANILO
PADILHA, deceased,

PAULINHO GOBBATO, as Personal
Representative of the Estate of RAFAEL CORREA
GOBBATO, deceased,

LUIZ MAURO GROHS, as Personal Representative
of the Estate of LUIZ FELIPE GROHS, deceased,

AJUSSARA ENRISCO, as Personal Representative
of the Estate of RAFAEL VALMORBIDA,

GRACIELA MISSEL, as Personal Representative of
the Estate of MARCIO BESTENE KOURY,
deceased,

ILKA APARECIDA LABES PEIXOTO, as
Personal Representative of the Estate of DELFIM
PADUA PEIXOTO, deceased,

SANDRA JACQUELINE MADRID LUCAS
CASTILLO, as Personal Representative of the Estate
of ANDERSON DONIZETI LUCAS, deceased,

2

DICLEIA JOHANN DE JESUS, as Personal
Representative of the Estate of SERGIO LUIZ
FERREIRA DE JESUS, deceased,

AMANDA DOS SANTOS MACHADO, as
Personal Representative of the Estate of DENER
ASSUNCAO BRAZ, deceased,

ALAN RUSCHEL,

ANA CLAUDIA SEVERO, as Personal
Representative of the Estate of EDUARDO LUIS
PREUSS, deceased,

FABIENNE BELLE, as Personal Representative of
the Estate of LUIS CESAR MARTINS CUNHA,
deceased,

EZIQUIELA CALDERON GALIOTTO, as
Personal Representative of the Estate of GELSON
GALIOTTO, deceased,

CRISTIANI VICENTINI, as Personal
Representative of the Estate of RENAN CARLOS
AGNOLIN, deceased,

FERNANDA AMORIM DE ABREU, as Personal
Representative of the Estate of ARTHUR
BRASILIANO MAIA, deceased,

MAURI ANTONIO DA SILVA, as Personal
Representative of the Estate of BRUNO MAURI
DA SILVA, deceased,

ADRIANA DE OLIVEIRA SAROLI, as Personal
Representative of the Estate of LUIZ CARLOS
SAROLI, deceased,

SUELI SALETE DE CASTRO, as Personal
Representative of the Estate of EDUARDO DE
CASTRO, deceased,

XIMENA SUAREZ OTTERBURG,

3

RAQUEL DONAIDE CORONEL BENAGAS, as
Personal Representative of the Estate of GUSTAVO
FELICIANO ENCINA NUNEZ, deceased,

ELIZETH ANDREINA SANDOBAL GONZALEZ,
as Personal Representative of the Estate of ANGEL
EDUARDO LUGO UGAS, deceased,

OVIEDO VON BORRIES CABALLERO, as
Personal Representative of the Estate of SISY
GABRIELA ARIAS PARAVICINY, deceased,

EDWIN TUMIRI CHOQUE,

PAMELA JUSTINIANO PEDRAZA as Personal
Representative of the Estate of ROMMEL DAVID
VACAFLORES TERRAZAS, deceased,

FLORA TARQUI AVILA as Personal
Representative of the Estate of ALEX RICHARD
QUISPE GARCIA, deceased,

LUCAS CASAGRANDE DAL BELLO as Personal
Representative of the Estate of MAURO LUIZ DAL
BELLO, deceased,

       Plaintiffs,

v.

LINEA AEREA MERIDA INTERNACIONAL DE
AVIACION d/b/a LAMIA CORPORATION S.R.L.,
a foreign corporation, KITE AIR CORPORATION
LTD., a foreign corporation, MARCO ANTONIO
ROCHA VENEGAS, RICARDO ALBERTO
ALBACETE VIDAL, AON UK LIMITED, a
foreign corporation, BISA SEGUROS Y
REASEGUROS, S.A., a foreign corporation,
TOKIO MARINE KILN SYNDICATES LIMITED,
a foreign corporation, and JOHN DOES 1-25,
foreign corporations,

       Defendants.
_____/

**PUTATIVE DEFENDANT TOKIO MARINE KILN SYNDICATES LIMITED'S**
**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR REMAND**

Putative Defendant TOKIO MARINE KILN SYNDICATES LIMITED ("**Tokio Marine Kiln**"),[1],[2] by and through undersigned counsel, hereby files this response ("**Response**"), in opposition to Plaintiffs' Motion for Remand (Dkt. 15) ("**Motion for Remand**"), and states as follows:

## I.   BRIEF INTRODUCTION IN RESPONSE

Plaintiffs' Motion for Remand should be denied.  As set forth more fully below, the allegations in Plaintiffs' proposed Second Amended Complaint and Third Party Complaint (Dkt. 9-2) (the "**Third Party Complaint**"), fall squarely within the Convention for the Unification of Certain Rules For International Carriage by Air, Done at Montreal, opened for signature May 28, 1999, S. Treaty Doc. No. 106-45, at 27(2000), 2242 U.N.T.S. 350 ("**Montreal Convention**"). Indeed, the Third Party Complaint, within its four corners, seeks damages for bodily injury and the deaths of passengers who were on a Montreal Convention flight, by express reference to the

---

[1]     Tokio Marine Kiln avers that this Court lacks personal jurisdiction over Tokio Marine Kiln as further set out in Tokio Marine Kiln's Response to Motion for Leave to Amend (Dkt. 10).  Tokio Marine Kiln therefore does not waive and expressly reserves all jurisdictional defenses and objections, and appears specially and for the expressly limited purpose of opposing the Motion for Remand. Tokio Marine Kiln is also not waiving but expressly preserving all other jurisdictional defenses including but not limited to the right to arbitration of any and all claims alleged to derive from the insurance policy issued to Defendant LaMia, and that in all claims arising out of the Montreal Convention, discussed in the Third-Party Complaint, in respect of transportation by air may only be brought in the forums specified in Article 33 of the Convention.  As to the latter point, this Court has jurisdiction to determine whether the United States is a permissible forum for a claim governed by the Montreal Convention. *See, e.g., Wendelberger v. Deutsche Lufthansa AG*, No. 18-cv-01055-PJH, 2018 WL 2387858, at *3-4 (N.D. Cal. May 25, 2018).  Tokio Marine Kiln therefore reserves its right to challenge whether the remedies sought by the Plaintiffs against Tokio Marine Kiln in this action can be properly pursued in the United States.

[2]     Plaintiffs incorrectly identify Tokio Marine Kiln, the managing agency of the underwriting syndicates, as the underwriters themselves.

flight number, the origin and destination—both Montreal Convention signatories—, and none of residences of the decedent passengers was in the United States.

Thus, because the courts of the United States have original jurisdiction over the claims asserted in the Third Party Complaint, the Court has the authority to address whether federal treaty subject matter jurisdiction may be exercised in the U.S., rendering remand to state court improper here.

II.    **RELEVANT FACTS**

1.    As demonstrated by the Third Party Complaint, Plaintiffs' claims arise from the November 28, 2016 crash of LaMia Flight 2933 ("**Flight 2933**"),[3] which originated in Santa Cruz, Bolivia, with the ultimate destination of Rionegro, Colombia.  (*See* Dkt. 9-2 at ¶ 110.)  The plane crashed near Medellin, Colombia, killing 71 individuals and injuring 6 others on board.  (*See id.* at ¶ 125.)

2.    The first paragraph of Plaintiffs' proposed Third Party Amended Complaint describes the action as follows:

> This is a civil action brought by various plaintiffs, ***some who are suing for negligence following a personal injury and others who are suing for wrongful death*** pursuant to Florida's wrongful-death statute, Fla. Stat. § 768.21, and any other applicable wrongful-death statute, ***for the incident that occurred on or about November 28, 2016***, involving the British Aerospace Avro 146-RJ85, Registration Number CP2933, Serial Number E2348 (the "aircraft"), aboard which were the injured plaintiffs or their decedents, that ran out of fuel and ***crashed in Colombia*** (the "subject accident"). The aircraft was being operated by Defendant LaMia Corporation S.R.L. as LaMia Flight 2933 (the "subject flight").

---

[3]    Flight 2933 was allegedly operated by Defendant LINEA AEREA MERIDA INTERNACIONAL DE AVIACION d/b/a LAMIA CORPORATION S.R.L., a foreign corporation ("**LaMia**").  (*Id.* at ¶ 105.)

(*Id*. at ¶ 1 (emphasis added).)

3.      Specifically, Plaintiffs (all of whom are representatives of ***passengers*** who perished in the crash of Flight 2933), assert, in their Third Party Complaint, that Defendants LaMia, KITE AIR CORPORATION LTD. (**"Kite"**), MARCO ANTONIO ROCHA VENEGAS (**"Rocha Venegas"**), and RICARDO ALBERTO ALBACETE VIDAL (**"Albacete Vidal"**) are liable to Plaintiffs ***under theories of wrongful death and negligence*** due to their respective acts and omissions which resulted in the crash of Flight 2933 and caused the decedents' deaths.  (*See id.* at ¶¶ 139, 146, 153, 160, 167, 174, 181, and 188.)

4.      Moreover, Plaintiffs assert that they have suffered damages directly and proximately as a result of the alleged wrongful and negligent conduct of Defendants LaMia (the carrier), Kite, Rocha-Venegas, and Albacete-Vidal.  (*See id.* at ¶¶ 140, 147, 154, 161, 168, 175, 182, and 189.)

5.      In the Third Party Complaint, Plaintiffs also seek to assert direct and recourse claims against three new putative defendants—Tokio Marine Kiln, BISA SEGUROS Y REASEGUROS, S.A. (**"BISA"**), and AON LIMITED UK. (**"AON"**), together with John Does 1-25, specifically seeking to hold them liable for ***Plaintiffs' injuries and damages*** caused by the actions of the carrier and arising from the crash of Flight 2933 as follows:

a.      As to AON, at Paragraph 193, Plaintiffs allege that AON was LaMia's broker and that: "The flight insurance policy [AON] ultimately obtained left LaMia exposed in numerous respects, and it deprived the Plaintiffs of compensation ***for their significant injuries and damages."*** (*Id.* at ¶ 193 (emphasis added).)

b.      As to BISA, at paragraph 203, the Third Party Complaint alleges:

BISA was and is the insurance company, ***which contracted to***

> ***provide flight insurance to LaMia.*** BISA entered into a
> contract to provide flight insurance to LaMia for its business
> operations. ***The policy was enforceable and in effect at the
> time of the subject accident, and it provided that BISA would
> provide coverage for the subject accident*** and defend LaMia,
> its insured, it litigation arising from a covered event. Despite
> these provisions, BISA refused to defend LaMia in the
> litigation and to cover the subject accident.

(*Id.* at ¶ 203 (emphasis added).)

       c.     Lastly, at Paragraph 213, notwithstanding Plaintiffs' acknowledgment that

they do not have a copy of the reinsurance policy, the Third Party Complaint asserts that Tokio

Marine Kiln:

> … was and is the insurance company, ***which contracted to
> provide flight reinsurance covering LaMia. The flight
> reinsurance policy was enforceable and in effect at the time
> of the subject accident.*** Tokio Marine has refused to provide
> coverage and has otherwise refused to meet its obligations
> under the flight insurance policy.

(*Id.* at ¶ 213 (emphasis added).)

      6.     Specifically as to Tokio Marine Kiln, Plaintiffs assert two causes of action (Count

XIII for Breach of Contract and Count XIV for Common Law Bad Faith). As to the Breach of

Contract claim, Plaintiffs are seeking judgment against Tokio Marine Kiln for all damages suffered

by Plaintiffs and/or LaMia, Kite, Rocha-Venegas, and/or Albacete-Vidal arising from Tokio

Marine Kiln's alleged breach of a reinsurance policy that was allegedly "enforceable and in effect

***at the time of the subject accident."*** (*Id.* at ¶ 213 and WHEREFORE clause (emphasis added).)

As to the Common Law Bad Faith claim, Plaintiffs are demanding judgment against Tokio Marine

Kiln for the very same damages for which Plaintiffs assert LaMia, the carrier, admitted being liable

– ***damages arising from the crash of LaMia Flight 2933***. (*Id.* at ¶ 215 and WHEREFORE

clause.)[4]

7.     These claims do not seek any new type or metric of damage but look to recover the same death and bodily injury damages that comprise the claims set forth against Defendants LaMia, Kite, Rocha-Venegas, and Albacete-Vidal, all of which are governed by the Montreal Convention.

## III.    LEGAL ARGUMENT IN RESPONSE

### A.    Applicable Standard.

In examining Plaintiffs' Motion for Remand, it is worth setting forth the applicable legal standard.  Removal is proper in "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Original jurisdiction must be established with either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332 (not asserted here).   Federal question jurisdiction exists when the civil action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  The burden of establishing federal jurisdiction falls on the party seeking to invoke the jurisdiction of the federal court (*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)) and courts are to strictly construe the requirements of 28 U.S.C. § 1441 (removal jurisdiction) and remand all cases in which jurisdiction is doubtful (*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941); *Univ. of So. Ala v. American Tobacco Co.*, 168 F.3d 405, 411 (11 Cir. 1999)).

---

[4]     Specifically, the Common Law Bad Faith claim seeks to recover the amount of the judgment entered as against LaMia based on a purported settlement agreement for "amounts totaling $844 million [and in which] . . . LaMia admitted liability."  (*Id.* at ¶¶ 206, 215.)

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citation omitted).  The well-pleaded complaint rule provides that "the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court." *Id.* at 398-399.  However, "even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) [his] state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." *Dunlap v. G&L Holding Group Inc.*, 381 F.3d 1285, 1290 (11 Cir. 2004) (citation omitted).

In the present case, Plaintiffs' proposed Third Party Complaint undeniably is seeking to recover damages arising out the crash of international air transportation governed by the Montreal Convention.  Thus, for the reasons that follow, this matter should not be remanded.

**B.     Plaintiffs' First Argument, That Because AON, BISA, And Tokio Marine Kiln Are Not Carriers, The Montreal Convention Does Not Apply To And Does Not Preempt Plaintiffs' Claims For Coverage And Bad Faith, Flies In The Face Of The Montreal Convention's Very Terms And The Facts Alleged In The Third Party Complaint.**

In their Motion for Remand, Plaintiffs assert that: "[p]ut simply, because the proposed defendants *are not carriers,* the Montreal Convention does not apply, and the treaty does not preempt *Plaintiffs' coverage and bad faith claims* against Tokio Marine [Kiln]."  (Motion for Remand at p. 9 (emphasis added).)  Plaintiffs' argument flies in the face of the very terms of the Montreal Convention[5] and the facts alleged in the Third Party Complaint.

---

[5]     During the course of drafting the text of the Montreal Convention treaty, the convention

The Montreal Convention states that it "applies to **all** international carriage of persons, baggage or cargo performed by aircraft for reward."  *See* Montreal Convention art.1.1 (emphasis added).[6]  The term "international carriage" is defined in Article 1 as "any carriage in which, according to the agreement between the parties, the place of departure and the place of destination, whether or not there be a break in the carriage or a transhipment, are situated either within the territories of two States Parties…."  *Id.* at art. 1.2.  Article 17 defines the circumstances under which the Montreal Convention will govern liability for damage sustained in case of death or bodily injury of a passenger, as follows:

> ***The carrier is liable for damage sustained in case of death or bodily injury of a passenger*** upon condition only that ***the accident***

---

delegates purposefully revised Article 37 (at that time, titled Article 31) to encompass rights of recourse broader than just indemnification and contribution.  For example, as initially drafted, this provision was entitled "Article 31 – Liability of Third Parties – Indemnification."  *See* ICAO, International Conference of Air Law, Vol. III, Preparatory Materials, 1999, Doc. 9775-DC/2, C-WP/10470, Attachment at p. 44.  This proposed language, however, was revised by the delegates to remove the word "Indemnification" from its title, resulting in the title "Article 31 – Right of Recourse against Third Parties."  *See* ICAO, International Conference of Air Law, Vol. III, Preparatory Materials, 1999, Doc. 9775-DC/2, C-WP/10613, Attachment at p. 100.  The delegates approved this final title without dissension or discussion to reflect expressly via this article that the Convention would provide a broad "right of recourse" against **any** third party.  *See* ICAO, International Conference of Air Law, Vol. III, Preparatory Materials, 1999, Doc. 9775-DC/2, Legal Committee of the 30th Session Report at p. 179.  ("Article 31 was approved without discussion.").  Textual interpretation of the treaty further supports that the right of recourse is broader than simply indemnification or contribution.  For example, Article 48 governs relations of contracting and actual "carriers" and discusses the rights and obligations of carriers between themselves, "including any right of recourse ***or indemnification***."  Montreal Convention art. 48 (emphasis added).

[6]     *See also El Al Israel Airlines, Ltd. v. Tseng,* 525 U.S. 155, 175 (1999) (holding that Warsaw Convention, the predecessor treaty to the Montreal Convention, "precludes a passenger from maintaining an action for personal injury damages under local law when her claim does not satisfy the conditions for liability under the Convention.").  The Montreal Convention replaced the Warsaw Convention.  However, decisions interpreting the Warsaw Convention are routinely applied to cases involving the Montreal Convention.  *Baah v. Virgin Atlantic Airways, Ltd.*, 473 F. Supp. 2d 591 (S.D.N.Y. 2007); *Paradis v. Ghana Airways Ltd.*, 348 F. Supp. 2d 106 (S.D.N.Y. 2004).

> ***which caused the death or injury took place on board the aircraft***
> or in the course of any of the operations of embarking or
> disembarking.

Montreal Convention art. 17.1 (emphasis added).

Further, when the Convention applies to the "international carriage," Article 29 of the

Montreal Convention states that the Convention provides the ***exclusive*** mechanism for recovery:

> In the carriage of passengers, baggage and cargo, ***any action for***
> ***damages, however founded, whether under this Convention or in***
> ***contract or in tort or otherwise,*** can only be brought subject to the
> conditions and such limits of liability as are set out in this
> Convention without prejudice to the question as to who are the
> persons who have the right to bring suit and what are their respective
> rights. In any such action, punitive, exemplary or any other non-
> compensatory damages shall not be recoverable.

Montreal Convention art. 29 (emphasis added).   Article 29 therefore brings ***any action for***

***damages*** related to such international carriage, ***however founded***, and ***whether in contract or***

***otherwise***, within the Montreal Convention.  *See Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11–

cv–69–Orl–19GJK, 2013 WL 2152566 at \*4, n.5 (M.D. Fla. Jan. 9, 2013) ("Article [29] (sic) of

the Montreal Convention provides in relevant part: 'In the carriage of passengers and baggage,

***any action for damages, however founded***, can only be brought subject to the conditions and

limits set out in this Convention.'") (emphasis added).   Thus, "[b]oth the Supreme Court and the

Eleventh Circuit have made clear that the Montreal Convention 'is the exclusive mechanism of

recovery for personal injuries suffered on board an aircraft or in the course of embarking or

disembarking from an airplane.'"  *Vanderwall v. United Airlines, Inc.*, 80 F. Supp. 3d 1324, 1334

(S.D. Fla. 2015); *Marotte v. American Airlines, Inc.,* 296 F.3d 1255, 1259 (11th Cir. 2002); *Ugaz*

*v. American Airlines, Inc.,* 576 F.Supp.2d 1354, 1364 (S.D. Fla. 2008).  Of key importance, given

the Montreal Convention's "exclusive domain," over claims for bodily injury or death of a

passenger while on board an aircraft or in the course of embarking or disembarking from an

airplane, ***any claim for personal injury suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," if not allowed under the Convention, is not available at all.*** *Tseng,* 525 U.S. at 161 ("We conclude that the protocol, to which the United States has now subscribed, clarifies, but does not change, the Convention's exclusivity domain. We therefore hold that recovery for a personal injury suffered 'on board [an] aircraft or in the course of any of the operations of embarking or disembarking,' Art. 17, 49 Stat. 3018, if not allowed under the Convention, is not available at all.")

As set forth in detail below, the Plaintiffs' Third Party Complaint sets forth allegations against all defendants, including Tokio Marine Kiln, for causes of action seeking compensation for damages resulting from Flight 2933, falling squarely within the Montreal Convention based upon a plain reading of Articles 1 and 29.

Applying the above to the present case, it is beyond dispute that the damages sustained due to the deaths and bodily injuries resulting from the crash of Flight 2933 fall within the Montreal Convention.  This is because as set forth above, the Third Party Complaint asserts that Plaintiffs are ***entitled to damages*** sustained due to ***the accident at issue***, *i.e.*, the crash of Flight 2933, which resulted in the deaths or bodily injuries of passengers ***while on board said Flight***; and that the Flight was traveling from Santa Cruz, Bolivia to Rionegro, Colombia (both of which are signatories to the Montreal Convention).

Additionally, every cause of action (Counts I through XV) within the Third Party Complaint specifically "re-allege[s] and incorporate[s] the allegations of paragraphs 1 – 132 [sic]" therein.  *Id*. at ¶¶ 134, 141, 148, 155, 162, 169, 176, 183, 190, 194, 201, 205, 211, 214, and 219. Most pertinent are the "GENERAL ALLEGATIONS" contained within paragraphs 105 – 133. These allegations encompass the particulars of Flight 2933 and set forth the detailed factual basis

underpinning every cause of action within the Third Party Complaint. *Id.* at ¶¶ 105 – 133. By incorporating this robust set of facts about Flight 2933 within each count, Plaintiffs expressly entwined every one of their causes of action within the Montreal Convention regime.

Against the foregoing backdrop, it is also indisputable that Counts IX through XV against the putative new defendants premise the Plaintiffs' recovery on the existence of Flight 2933. Not only does each of these Counts incorporate the Flight 2933 "GENERAL ALLEGATIONS" to underpin the cause of action, but each Count against the putative new defendants contains a "WHEREFORE" clause in which ***all plaintiffs*** demand judgment for ***all damages*** related to the cause of action. *Id.* at ¶¶ 193, 200, 204, 210, 213, 218, 223, and their respective WHEREFORE clauses. As a result, Plaintiffs' Third Party Complaint brings Plaintiffs' new claims squarely within Articles 1 and 29 of the Convention. *See* Montreal Convention art. 1 and art. 29; *see also Siddiq*, 2013 WL 2152566 at *4, n.5.

In their Motion for Remand, Plaintiffs attempt to distance their claims against Tokio Marine Kiln from the Montreal Convention by asserting that because Defendants AON, BISA, and Tokio Marine Kiln ***are not carriers,*** the Montreal Convention does not apply, and ***the treaty does not preempt Plaintiffs' coverage and bad faith claims*** against Tokio Marine Kiln. As to the first part of the argument, whether Defendants AON, BISA, and Tokio Marine Kiln are or are not carriers is irrelevant to the application of the Montreal Convention. As set forth above, the Plaintiffs have sued the carrier, LaMia, for damages arising from an accident falling squarely within the Montreal Convention, and Defendants AON, BISA, and Tokio Marine Kiln are sued precisely because Plaintiffs assert that they are the broker and insurers of the carrier, LaMia. Tokio Marine Kiln's status as a non-carrier does not transform the nature of Plaintiffs' claims so as to evade application of the Montreal Convention. *See In re Air Crash Near Rio Grande Puerto Rico*

14

*on December 3, 2008*, 10-CV-81551, 2015 WL 328219, at *4 (S.D. Fla. Jan. 23, 2015) (finding "that alter ego and joint venture theories of liability can be asserted under the Convention," against non-carrier "if they are recognized under the law of the forum.").

Moreover, as to the second part of Plaintiffs' argument, that the treaty does not preempt Plaintiffs' coverage and bad faith claims against Tokio Marine Kiln, as the Supreme Court stated in the *Tseng* case, any claim for personal injury suffered "on board [an] aircraft or in the course of any of the operations of embarking or disembarking," if not allowed under the Convention, is not available at all. Thus, to the extent Plaintiffs wish to pursue "coverage and bad faith claims," they must pursue them under the convention or not at all. Said differently, because the Montreal Convention is clear that, "in the carriage of passengers and baggage, any action for damages, *however founded*, can only be brought subject to the conditions and limits set out in [the] Convention," Plaintiffs' "coverage and bad faith claims" fall within the Montreal Convention's exclusive domain, howsoever they may be described. Accordingly, remand is improper.

**C.   Plaintiffs' Argument That Claims Not Within The Scope Of The Montreal Convention Can And Should Be Remanded When The Claims Arise Under Local Law, Should Be Rejected.**

Relying on the case of *AGCS Marine Ins. Co. v. Geodis Calberson Hungaria Logisztikai KFT,* 16-CV-9710 (JMF), 2017 WL 5891818 (S.D.N.Y. Nov. 28, 2017), Plaintiffs argue that: "[m]any courts have held that *claims not within the scope of the Montreal Convention can and should be remanded when the claims arise under local law."* (*See* Motion for Remand at p. 9 (emphasis added).) Plaintiffs' argument is a non-sequitur.

However, the *AGCS Marine Ins. Co.* case was not remanded and the parties agreed that "the Montreal Convention generally [applied to that] case because [the case] relates to the 'international carriage' of 'cargo'." 2017 WL 5891818 at *2. In *AGCS Marine Ins. Co.*, the court

held that ***"third party claims for indemnification and contribution"*** were not time barred. *See* 2017 WL 5891818 at *3 (emphasis added). Why? Because, the court relied upon cases interpreting whether third party claims for indemnification and contribution are subject to Article 35.[7] *Id.* (quoting *Chubb Ins. Co. of Europe S.A. v. Menlo Worldwide Forwarding, Inc.*, 634 F.3d 1023, 1027 (9th Cir. 2011) (""By its terms," the Court reasoned, ***"Article 35 extinguishes only a single right: the 'right to damages.'"***) (emphasis added)). As such, Plaintiffs' reliance on *Chubb Ins. Co. of Europe S.A.*, also is misplaced. *See id.* ("In other words, because an action between carriers for indemnification or contribution is premised on the "right of recourse," rather than the "right to damages," Article 35's time bar does not apply. Instead, the ***timing*** of such an action is governed by local law.") (emphasis added). In those cases, the parties were not arguing over whether the Montreal Convention applied to the cargo damage claims at issue but rather that the claims were time-barred. In fact, the *AGCS Marine Ins. Co.* court expressly gave recognition to the parties' acknowledgment that the Convention applied to their claims – it was disputed whether the third-party action was untimely even though the underlying action had been brought timely under the Convention, ***and the court's basis for subject matter jurisdiction was the applicability of the Convention***. Tokio Marine Kiln is not asserting that Plaintiffs' original Complaint was time-barred but rather that Plaintiffs' attempt to restate their causes of action as against additional defendants seeking the recovery of the same damages arising from Flight 2933 does not negate the Convention's applicability to Plaintiffs' damages claims.

---

[7]     Article 35 states, in pertinent part, that:

***The right to damages*** shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

Further, in the present case, Plaintiffs have not raised claims for indemnification, contribution, apportionment, or set-off against Tokio Marine Kiln. They do not to seek contribution from Tokio Marine Kiln as a joint tortfeasor or indemnification under a contract to which Tokio Marine Kiln is a party. Indeed, the only agreement referenced in the Third Party Complaint to which Tokio Marine Kiln is a party is the reinsurance contract with BISA. Instead, Plaintiffs' claims seek damages directly against Tokio Marine Kiln in Plaintiffs' personal capacity. Therefore, Plaintiffs cannot simply travel under the holding of the *AGCS Marine Ins. Co.* case or the holding in the *Chubb Ins. Co. of Europe S.A.* case, which at their heart held that the state law statute of limitations governed the question of timeliness of the third-party actions, not whether substantively the claims were governed by the Montreal Convention. Most significantly, these cases do not support Plaintiffs' assertion that the Court lacks subject matter jurisdiction over this action. Rather, because as clearly set forth in the Third Party Complaint, Plaintiffs assert claims against Tokio Marine Kiln, purportedly under theories of Breach of Contract and Common Law Bad Faith, for damages arising from bodily injury or death related to the crash of Flight 2933—an international flight from one signatory to the Montreal Convention to another—, these claims are within Article 17 and Article 29 of the Montreal Convention.

**D.     Plaintiffs' Blanket Statement That Breach Of Contract Claims Do Not Fall Within Any Of The Three Damage Provisions Of The Montreal Convention, Is Simply Wrong.**

Plaintiffs cite to the case of *Atia v. Delta Airlines, Inc.*, 692 F. Supp. 2d 693 (E.D. Ky. 2010), in support of their blanket statement that "the Montreal Convention did not apply to a breach of contract claim because, while "an action for damages" it did not "fall[] within one of the Convention's three damage provisions."" *See* Motion for Remand at p. 10. However, a review of the *Atia* decision itself demonstrates that Plaintiffs' blanket pronouncement is not black letter law.

Rather, the *Atia* case demonstrates that whether a breach of contract claim falls within Montreal Convention or is preempted by it, is dependent on a fact-specific analysis.

In *Atia*, the plaintiff asserted both a breach of contract claim and a public accommodation discrimination claim after she was removed from a flight prior to takeoff, alleging she was not permitted to fly on account of racial animus on the part of the carrier's employee. *Id.* at 695. In addressing the breach of contract claim, the court began its analysis by noting the Convention's "presumption of liability against air carriers for three categories of damages arising out of the international carriage of passengers or goods." *Id.* at 699. Specifically:

> [1] Article 17 provides carrier liability for the death or bodily injury of a passenger, or the destruction, loss of, or damage to her baggage provided that the harm "took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, art. 17. [2] Article 18 provides carrier liability "for damage sustained in the event of the destruction or loss of, or damage to, cargo upon condition only that the event which caused the damage so sustained took place during the carriage by air." Montreal Convention, art. 18. [3] Finally, Article 19 provides carrier liability "for damage occasioned by delay in the carriage by air of passengers, baggage or cargo."

*Id.* The court then held that the plaintiff's breach of contract claim did not fall within the three categories of damages set out above, specifically ruling that said claim was outside of Article 19 because it did not relate to damage occasioned by a delay but rather, related to a complete non-performance. *Id.* at 701. In reaching its decision, the *Atia* court reviewed cases cited by the defendants wherein courts had held breach of contract claims to be preempted by the Montreal Convention, but then determined that the breach of contract cases cited by the defendants were distinguishable from the nonperformance case at bar. *Id.* at 700. Plaintiffs plainly are not alleging nonperformance by LaMia, and instead are asserting a classic wrongful death case arising out of a plane crash. Thus, while the cases cited by the defendants in the *Atia* case may have been inapplicable to *that* plaintiff's claims, those cases are wholly applicable to breach of contract

claims arising from the crash of LaMia Flight 2933 and underscore the applicability of the Convention to such claims.

For example, in the case of *Yahya v. Yemenia–Yemen Airways,* No. 08–14789, 2009 WL 2711955, at *1 (E.D. Mich. Aug. 25, 2009), the plaintiff, as personal representative of the estate of a passenger who died during an international flight, brought several state-law claims—including breach of warranty—alleging that the passenger's death was caused by airline's refusal to land prior to reaching scheduled destination, and the breach of warranty claim was deemed preempted. Similarly, in *Mbaba v. Societe Air France,* 457 F.3d 496, 500 (5th Cir. 2006), the plaintiff alleged state-law claims, including breach of contract, stemming from alleged excess baggage fees, and the claim was deemed preempted.  Moreover, in *Bloom v. Alaska Airlines,* 36 Fed. Appx. 278, 281 (9th Cir. 2002), the court held: "Bloom's pleadings ... make clear that his contract and fraud actions are indistinct from his claims from emotional distress because all arose from the same discrete event during embarkment. Therefore, these causes of action are preempted by the Warsaw Convention."  Similarly, in *Thede v. United Airlines, Inc., No.* 17-cv-03528-PJH, 2018 WL 1569836, at *5 (N.D. Cal. 2018), stating that *"*plaintiff is incorrect that the Convention's substantive scope is determined by the type of claim asserted," and that "the Convention covers incidents that occur during international carriage—regardless of the type of claim asserted—and preempts federal or state law claims that might be brought as a result of those incidents," the court held that because plaintiff did not "allege any facts that distinguish plaintiff's contract claim from the inflight events," the Montreal Convention preempted plaintiff's breach of contract claim.

In *Knowlton v. American Airlines*, the plaintiff filed a class action complaint in Baltimore County, on behalf of herself and others similarly situated alleging breach of contract arising from the fact that although when plaintiff purchased her ticket, the electronic confirmation of the

19

plaintiff's travel itinerary included the notation "breakfast" on the first leg of her international travel, she was informed in flight that she could purchase breakfast for $3.00.  No. RDB-06-854, 2007 WL 273794, at *1 (D. Md. Jan. 31, 2007).  American removed to federal court alleging that "even though the Montreal Convention did not specifically discuss carrier liability for the alleged breach of contract at issue in this case, the treaty nonetheless completely preempts" the plaintiff's state law breach of contract claim.  *Id.*  The district court held that federal preemption cannot serve as the basis for federal question jurisdiction, warranting removal, unless the doctrine of complete preemption applies, in which case the federal claim is "deemed to appear on the face of the complaint."  *Id.* at *3 (citing *Pinney v. Nokia, Inc.*, 402 F. 3d 430, 449 (4th Cir. 2005)).  The court also recognized that *Tseng* stands for the proposition that the Warsaw Convention preempted state law claims.  *Id.* at *4.  Because the Warsaw and Montreal Conventions were "designed to create a uniform system of liability among airlines for claims arising from international flights,"[8] the *Knowlton* court held that the Montreal Convention completely preempts all claims arising out of international flights.  *Id.* at *5.  The court therefore denied the plaintiff's motion to remand.  *Id.*

**E.      Plaintiffs' Argument For Remand Relies on Misinterpreted and Distinguishable Case Law.**

Plaintiffs' reliance on *Jensen v. Virgin Atl.*, 12-CV-06227 YGR, 2013 WL 1207962 (N.D. Cal. Mar. 25, 2013) fares no better.  In *Jensen*, the court, "follow[ed] the decisions of the district courts in California that hold the exclusivity provisions of the Montreal Convention operate as an affirmative defense but do not completely preempt state law causes of action."  This Court has taken the contrary position.  In *Moran v. Am. Airlines, Inc.*, the court denied a motion for remand.

---

[8]      *Id.* at *3 (citing *Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005)).

10-80878-CIV, 2011 WL 13116533, at *6 (S.D. Fla. Feb. 17, 2011), *report and recommendation adopted*, 10-80878-CIV, 2011 WL 13116534 (S.D. Fla. Mar. 9, 2011).  In so doing the court held:

> Certain language in the Convention's claim-restricting provision could be read to support Moran's position that the Convention does not completely preempt state-law claims but instead limits them in accordance with the treaty's provisions: "In the carriage of passengers, baggage and cargo, any action for damages, however founded, *whether under this Convention or in contract or in tort or otherwise*, can only be brought subject to the conditions and such limits of liability as are set out in this Convention ...." Convention ch. III, art. 29 (emphasis added). ***The Court rejects this interpretation, however, because it is clear from the substance of the Convention's provisions that its detailed liability and remedial scheme is intended to provide the "exclusive mechanism of recovery" for claims within its scope***.

*Id.* (*italic* emphasis in original, ***bold*** emphasis added); *See also Monti v. Aarestrup*, 17-22753-CIV, 2018 WL 1863754, at *2 (S.D. Fla. Feb. 16, 2018), *report and recommendation adopted*, 17-22753-CIV, 2018 WL 1859348 (S.D. Fla. Mar. 13, 2018) (quoting *Moran* and holding that Montreal Convention provides complete preemption of state-law negligence claim).  *See also Schoeffler-Miller v. Northwest Airlines*, No. 08-cv-4012, 2008 WL 4936737, at *2-*4 (C.D. Ill. Nov. 17, 2008) (while noting that preemption is an affirmative defense and, therefore, not usually a basis for removal, court held that where plaintiff's claim raise issue that is completely preempted by federal law, plaintiff cannot keep it out of federal court simply by characterizing suit as one arising out of common (state) law and thus, denying remand).

Plaintiffs likewise cannot look to *Masudi v. Brady Cargo Services, Inc.*, 12-CV-2391 DLI, 2014 WL 4416502 (E.D.N.Y. Sept. 8, 2014) to change the essential nature of their damages claim to evade the Montreal Convention.  Rather, the portion of the case to which Plaintiffs point in their Motion merely finds that the plaintiff lacked standing to assert a claim under Article 50 of the Montreal Convention—a provision relating to insurance maintenance requirements—and also failed to produce evidence to support such a claim.  *Id.* at *6.  Indeed, *Masudi*'s only analysis of the preemptive scope of the Montreal Convention is its initial holding that "the Court must construe

21

the amended compliant as asserting claims under the Montreal Convention, rather than state law, as pleaded, because Plaintiff's claims fall within the 'complete preemption' corollary to the well-pleaded complaint rule."[9]  *Id.* at *6.

**F.      The Court In Any Event Has Supplemental Jurisdiction Over The Claims Against The Putative New Defendants Pursuant To 28 U.S.C § 1367(a).**

28 U.S.C. § 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy..."  28 U.S.C. § 1367(a) (2020).  This includes "claims that involve the joinder…of additional parties."  *Id.*

"The case or controversy standard is met when the supplemental claims arise out of a common nucleus of operative fact with the claims premised on federal jurisdiction."  *Great American Ins. Co. v. Pino Koaoba & Associates, Inc.*, 08-cv-20847, 2008 WL 11333518 at *2 (S.D. Fl. Dec. 8, 2008), citing  *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742-43 (11th Cir. 2006); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *Lucero v. Trosch*, 121 F.3d 591, 597 (11th Cir. 1997).  "In determining if the claims derive from a common nucleus of facts, the Court should ask whether the claims arise from the same facts or involve similar occurrences, witnesses, or evidence so that the state law claims fall within the Court's supplemental jurisdiction."  *Great American Ins. Co.* at *2.

Moreover, § 1367(c) provides limited instances where a court may decline to exercise supplemental jurisdiction, and this is a case where the factors – "judicial economy, convenience,

---

[9]      The court also granted summary judgment against the plaintiff on various other claims because "Plaintiff's unspecified claims arising under federal law are preempted by the Montreal Convention and dismissed."  *Id.* at *6.

fairness to the parties, and whether all claims would be expected to be tried together" – compel the exercise of supplemental jurisdiction. *All Underwriters Subscribing to Policy of Insurance Number B0621MMILSYB15055 v. Rika Boats, Ltd.*, 16-cv-20498, 2017 WL 1439944 *7 (S.D. Fl. Jan. 20, 2017) (citations omitted).

*Rika Boats* is instructive. It involved first-party and third-party causes of action separately addressing insurance coverage and underlying liability regarding a damaged yacht under federal and state law. *Rika Boats, Ltd.* at *1 – 2. In rejecting the argument that the Court should decline to exercise supplemental jurisdiction over the state-law claims, the Court noted that "it is common for courts to hear liability and coverage issues in the same proceeding." *Rika Boats* at *7, citing *O'Bannon v. Friedman's, Inc.*, 437 F. Supp. 2d 490, 493 (D. Md. 2006) ("exercising supplemental jurisdiction over indemnification claims against insurance company where the court had original jurisdiction over employment discrimination claims."). The reason is simple: "it makes sense to determine within the same proceeding, not only liability and damages, but also the legal rights and obligations of involved parties with respect to the payment of those damages." *Rika Boats* at *7, citing *O'Bannon*. Applying this reasoning to the present case, Plaintiffs' judgments and enforcement thereof are inextricably interwoven with whether Plaintiffs are entitled to recover the amount of the judgments under their Common Law Bad Faith claim, and at their heart require the Court to address the proper application of a multilateral treaty of the United States.

*O'Bannon* involved a Civil Rights Act employment discrimination claim against an employer. *O'Bannon* at 491. After filing the initial discrimination action (which was governed by federal law), the plaintiffs moved for leave to amend their complaint to add the defendant's liability insurers as new defendants for purposes of establishing coverage and seeking recovery against the insurers. *Id.* at 492 – 93. In exercising supplemental jurisdiction, the Court found that

"while a declaratory judgment regarding coverage…will focus also on the specific provisions of the policies, the facts regarding the [underlying liability] will be integral to a determination of whether or not liability on the part of [defendant]…would be covered by its [insurance] policies…" *Id*. at 493.

Similarly here, this Court should exercise its supplemental jurisdiction to determine "the legal rights and obligations of involved parties with respect to the payment" of the damages alleged by Plaintiffs in this case. As noted above, Plaintiffs' Complaint alleges the same nucleus of facts related to the Montreal Convention air transportation provided to the passengers of LaMia Flight 2933 as supporting every Count in their Complaint, including the counts against the putative new defendants. While Plaintiffs are seeking to assert third-party claims, Plaintiffs expressly made the decision to join all Counts in a pleading that is a second amendment of Plaintiffs original Complaint. Plaintiffs fully expected that all their claims would be heard together in the very same action, just not in federal court. Because supplemental jurisdiction exists on the face of Plaintiff's Complaint, the Court should deny Plaintiffs' remand motion in its entirety.

## V.    CONCLUSION

For the foregoing reasons, Putative Defendant TOKIO MARINE KILN SYNDICATES LIMITED asks that the Court enter an order denying Plaintiffs' Motion for Remand and granting such other relief as the Court deems just and proper.

Dated: November 17, 2020          **DLA PIPER LLP (US)**

By: */s/ Lida Rodriguez Taseff*
     Lida Rodriguez-Taseff
     Florida Bar No. 039111
     **DLA PIPER LLP (US)**
     200 South Biscayne Boulevard
     Suite 2500

24

Miami, Florida 33131
Phone:  305-423-8525
Fax:  305-675-7885
Email: lida.rodriguez-taseff@dlapiper.com
        dawn.perez@dlapiper.com

J. Trumon Phillips
Florida Bar No. 84568
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: trumon.phillips@dlapiper.com
        sheila.hall@dlapiper.com

Aidan M. McCormack
*(Admitted Pro Hac Vice)*
**DLA PIPER LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
Phone:  212-335-4750
Fax:  917-778-8750
Email:  aidan.mccormack@dlapiper.com

*Attorneys for Putative Defendant TOKIO MARINE
KILN SYNDICATES LIMITED*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on November 17, 2020, a true and correct copy of this document

was electronically filed with the Clerk of the Court using the CM/ECF system. I also certify that

the foregoing document is being served via email upon:

Steven C. Marks
smarks@podhurst.com
Kristina M. Infante
kinfante@podhurst.com
PODHURST ORSECK, P.A.
One S.E. 3rdAvenue, Suite 2300
Miami, FL 33131
Phone: (305) 358-2800
Fax: (305) 358-2382
*Attorneys for Plaintiffs*

Marco Antonio Rochas Venegas
marv_0405@hotmail.com
4850 S.W. 63rdTerr.
Apt. 413
Davie, FL 33314
*Pro Se Defendant*

*/s/ Lida Rodriguez-Taseff*
Lida Rodriguez-Taseff
Florida Bar No. 39111

EAST\177438761.4